Richard M. FILING, Phyllis Filing, and Hazel Boggs, Plaintiffs-Appellants,

v.

COMMERCIAL UNION MIDWEST INSURANCE COMPANY, Defendant-Third-Party Plaintiff-Respondent,†

Lisa Marie FILING, Metropolitan Life Ins. Co., ABC Ins. Co., Blue Cross/Blue Shield United of WI, Aetna Insurance Co., and Donna Shalala, Secretary of the United States Department of Health & Human Services, Third-Party Defendants.

Court of Appeals

*No. 97–2136. Submitted on briefs January 27, 1998.—Decided March 3, 1998.*

(Also reported in 579 N.W.2d 65.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Virginia M. Antoine* of *Habush, Habush, Davis & Rottier, S.C.* of Milwaukee, and *John D. Murray* of *Habush, Habush, Davis & Rottier, S.C.* of Appleton.

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *Michael T. Steber* of *Nelson, Dries & Zimmerman, S.C.* of Brookfield.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J.   In this dispute involving underinsured motorist coverage (UIM), the plaintiffs appeal from a declaratory judgment concluding that they could not claim underinsured benefits from their insurer, Commercial Union Midwest Insurance Company, for injuries incurred in a two-vehicle accident. The plaintiff, Richard Filing, was driving his automobile with three family members as passengers: his wife, Phyllis; his daughter, Lisa; and his mother-in-law, Hazel Boggs. The plaintiffs were injured when their vehicle was struck by a vehicle operated by Gregg Gulbrand. At the time of the accident, Gulbrand was insured by American Family Insurance Company with bodily injury liability coverage of $100,000 per person/$300,000 per accident. Richard Filing had two vehicles insured by Commercial with underinsured motorist coverage for each of his vehicles in the amount of $300,000. Commercial concedes that each plaintiff is an insured under its policy.

Because Gulbrand's liability insurance was insufficient to cover the plaintiffs' injuries, each plaintiff made a claim against Commercial for underinsured benefits.[1] Commercial denied the claims and both sides sought a declaratory judgment on the issue of whether

[1] American Family paid to the members of the Filing family the total sum of $300,000. Richard received $100,000, Phyllis received $100,000, Lisa received $50,000 and Hazel Boggs received $50,000. Richard, Phyllis and Hazel each made claim

the plaintiffs were entitled to recover underinsured benefits. The trial court concluded that the Gulbrand vehicle was not an underinsured vehicle and, therefore, granted Commercial's motion and denied the plaintiffs' motion.

Only the coverage issue is before us on appeal. Specifically, the plaintiffs contend that in determining whether Gulbrand's vehicle was underinsured, the trial court incorrectly compared the $300,000 per *accident* liability limit of Gulbrand's policy rather than the $100,000 per *person* limit. Because we conclude that the Gulbrand vehicle was an underinsured motor vehicle at the time of the accident, we reverse and remand the matter for further proceedings.

The interpretation of an insurance policy is a question of law, and we owe no deference to the trial court's interpretation. *Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 547, 464 N.W.2d 830, 833 (1991). When interpreting words of an insurance contract, we operate under the principle that the test is not what the insurer intended the words to mean, but rather what a reasonable person in the position of the insured would have understood the words to mean. *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 652, 436 N.W.2d 594, 599 (1989), *rev'd in part on other grounds by Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 199, 532 N.W.2d 729, 733 (1995). This test is an objective test. *Bertler v. Employers Ins. of Wausau*, 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978).

Whether an ambiguity in an insurance policy exists depends on the meaning that the term or provi-

against Commercial for underinsured benefits. After Commercial denied their claims, they filed this action.

sion would have to a reasonable person of ordinary intelligence. *Kozak v. United States Fid. & Guar. Co.*, 120 Wis. 2d 462, 467, 355 N.W.2d 362, 364 (Ct. App. 1984). An ambiguity exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured. *Northwestern Nat'l Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 255, 400 N.W.2d 33, 37 (Ct. App. 1986). When an ambiguity exists, the court must construe the policy against the insurance company which drafted it and in favor of the insured. *Stanhope v. Brown County*, 90 Wis. 2d 823, 849, 280 N.W.2d 711, 722 (1979).

This issue is one of first impression in Wisconsin. In our analysis, we begin with the definition of "underinsured motor vehicle" in Commercial's policy. The definition, common to many auto insurance policies, reads as follows:

> "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.* (Emphasis added.)

Thus, to determine whether Gulbrand's vehicle is underinsured, the phrase *"limit for bodily injury liability"* under American Family's policy must be compared to the single limit of $300,000 underinsured motorist coverage under the Commercial policy. When defining an underinsured motor vehicle in its policy, Commercial does not specify which bodily injury limit, the per person or the per accident limit, is to be compared with its single limit. Under the rationale in *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597,

645

599 (1990), if we compare the $100,000 per person limit to Commercial's $300,000 UIM limit, Gulbrand's vehicle is an underinsured vehicle. On the other hand, if we compare the $300,000 per accident limit to Commercial's $300,000 UIM limit, Gulbrand's vehicle is not an underinsured vehicle.[2] *See id.*

The parties agree that a policy providing $100,000 per person/$300,000 per accident means that, in any one accident, if only one person is killed or injured, the maximum liability limit is $100,000, but if two or more persons are killed or injured, the maximum liability limit is $300,000. Here, four people in Filing's vehicle were injured in the accident. Therefore, American Family's policy has a maximum liability limit of $300,000, which it paid.

Commercial argues that the per person limit merely acts to apportion the vehicle limit and the Gulbrand vehicle does not become an underinsured vehicle

---

[2] *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 456 N.W.2d 597 (1990), is not controlling as it did not involve an analogous factual situation and issue. In *Smith,* the plaintiff was injured by another driver who had liability insurance with a limit of $50,000 per person. The plaintiff had $50,000 of underinsured motorist coverage. *Id.* at 809–10, 456 N.W.2d at 598. The plaintiff's policy contained a definition almost identical to the definition used in Commercial's policy where it defined an underinsured motor vehicle to mean a motor vehicle to which a bodily injury liability policy applies "but its limit for bodily injury liability is less than the limit of liability for this coverage." *Id.* at 811, 456 N.W.2d at 599. The supreme court concluded this definition was unambiguous and after applying the definition held that the tortfeasor's vehicle was not an underinsured vehicle. *Id.* However, unlike our situation where four plaintiffs were injured, in *Smith,* only one person was injured and the court appears to have automatically applied the $50,000 limit.

simply because the individual claimants receive less than the full vehicle limits. It asserts that what is significant is what the claimants are dividing, which in this case would be the $300,000 limit. Commercial also explains that its definition of underinsured motor vehicle cannot specify which limit (per person or per accident) will apply because that cannot be known until after the accident occurs. Here, it reasons that, in this accident, the per person limit cannot be the vehicle's limit since it is undisputed the per accident limit applies and the per person limit does nothing more than divide up the larger vehicle limit. Consequently, it concludes that because the $300,000 amount is equal to the Commercial UIM $300,000 limit, the Gulbrand vehicle is not an underinsured motor vehicle.

On the other hand, the plaintiffs contend that because the phrase, *"limit for bodily injury liability"* is fairly susceptible to two reasonable meanings as to which limit applies in this situation, it must be ambiguous. It follows, they argue, that since ambiguities in an insurance policy must be construed in favor of the insured and against the insurer, the phrase must be construed to refer to the per person liability limit. Additionally, they contend this interpretation would be consistent with the reasonable expectations of the insured and any other construction would lead to absurd results.[3]

---

[3] The plaintiffs rightfully contend that adopting Commercial's argument would lead to absurd results. If Richard Filing had been the only person injured in the accident, it is undisputed that he could recover underinsured benefits since his maximum recovery of $100,000 under the per person limit would be less than the UIM amount of $300,000. However, because he was traveling with his family members who were also injured, he or any of his family members as an insured

██

It is fundamental that insurance policy language should be given its common everyday meaning and should be interpreted as a reasonable person in the insured's position would understand it. *Paape v. Northern Assur. Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). When a policy's terms are unambiguous and plain on their face, the policy must not be rewritten by construction. *Smith,* 155 Wis. 2d at 811, 456 N.W.2d at 599. Although ambiguity in policy language exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a

---

under Commercial's policy, would no longer be entitled to claim UIM benefits when comparing American Family's per accident limit. Commercial's reasoning would apply even though each insured could never collect more than $100,000, which is less than the UIM limit of $300,000. The plaintiffs suggest that an insured's right to recover underinsured benefits should not be contingent on the absence of other victims of the tortfeasor.

Additionally, this result becomes unreasonable if Filing was the only person injured in his vehicle, but Gulbrand also injured a passenger riding in his vehicle. That passenger would have a claim against Gulbrand and under Commercial's rationale, the per accident limit of the liability insurance would be triggered to deny Filing UIM benefits under his own policy.

Even more questionable would be the result if only two persons were injured in Filing's vehicle. The most each insured could collect from American Family would be $100,000 each, for a total of $200,000. Under Commercial's rationale, it is unclear if we apply the per accident limit of $300,000 or $200,000. But if we applied the $300,000 per accident limit as Commercial suggests, the result becomes unacceptable. It is well established that an insurance policy must be given reasonable interpretation and not one which leads to absurd results. *Nichols v. American Employers Ins. Co.*, 140 Wis. 2d 743, 751, 412 N.W.2d 547, 551 (Ct. App. 1987).

reasonable person of ordinary intelligence in the position of the insured, *Fletcher v. Aetna Cas. & Sur. Co.,* 165 Wis. 2d 350, 355, 477 N.W.2d 90, 91 (Ct. App. 1991), the fact that a word has more than one meaning does not make that word ambiguous if only one meaning comports with the parties' objectively reasonable expectations. *United States Fire Ins. Co. v. Ace Baking Co.,* 164 Wis. 2d 499, 503, 476 N.W.2d 280, 282 (Ct. App. 1991).

■

This policy must be read from the perspective of what the insured as an individual, not insureds as a whole, could recover from the tortfeasor's liability carrier. We must keep in mind that the purpose of underinsured motorist coverage is to "compensate the *victim* of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for *his or her* injuries." *Wood,* 148 Wis. 2d at 654, 436 N.W.2d at 600 (1989) (emphasis added). In *Wood,* the supreme court also stated: "[W]hen purchasing UIM coverage, we believe that *a reasonable insured* expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage." *Id.* (emphasis added). Stated another way, underinsured motorist coverage provides an insured with benefits to recover for losses caused by a negligent and financially underinsured motorist, subject to the policy limits, and to place the insured party in the same position as if the underinsured had liability limits equal to the insured's coverage. Thus, we must look at what limit the individual insured could recover from the negligent driver's liability policy and compare that amount to the limit of the UIM policy in order to determine whether the neg-

ligent driver's vehicle is an "underinsured motor vehicle."

Under the terms of American Family's policy with Gulbrand, the most it would ever pay to an injured person is the sum of $100,000, the per person limit. For example, if only one person was injured in Filing's vehicle, the person could recover from American Family a maximum of $100,000, the per person limit. Even if two or more persons were injured in the Filing vehicle, the maximum amount an injured person could ever recover from American Family would still be $100,000. Thus, regardless of the number of people injured in the Filing vehicle, the maximum amount each insured could ever recover from American Family would be the per person limit, which in this case is $100,000. Importantly, no individual person could ever recover the per accident limit of $300,000. With this understanding, an insured's objectively reasonable expectation is that the phrase "limit for bodily injury liability" means the per person limit of a tortfeasor's liability policy. Thus, individuals with a $300,000 UIM policy would expect UIM coverage if their claim is limited to $100,000 under the tortfeasor's policy.

We note that this interpretation is also consistent with Commercial's policy, which provides that it will pay compensatory damages "an insured" is legally entitled to recover from the owner or operator of an underinsured motor vehicle. This indicates that each insured's entitlement to underinsured motorist benefits must be determined on an individual basis.

If Commercial wanted a reasonable insured purchasing UIM benefits to understand that the per accident limit applies when involved in an accident with a tortfeasor whose liability policy has multiple limits, then it has an obligation to explain this in its

policy. Here, it did not. It is not for this court to rewrite the policy to give such an explanation.[4] *See McPhee v. American Motorists Ins. Co.*, 57 Wis. 2d 669, 682, 205 N.W.2d 152, 160 (1973).

Therefore, because under the terms of Commercial's policy, the Gulbrand vehicle was an underinsured motor vehicle, we reverse the judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[4] The plaintiffs also contend that even if this court were to conclude that the " *limit for bodily injury liability*" for purposes of the underinsured motor vehicle definition is the $300,000 per accident limit, they are still entitled to UIM coverage because, pursuant to the "Single Limit of Liability" provision in Commercial's policy, the limit of underinsured motorist coverage under the circumstances of this case is $600,000. Because of our holding, we need not address this contention. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).