Roger A. PRAEFKE and Kim Praefke,
Plaintiffs-Appellants,

v.

SENTRY INSURANCE COMPANY,
Defendant-Respondent.

Court of Appeals

*No. 04–0869. Submitted on briefs December 7, 2004.—Decided
December 28, 2004.*

2005 WI App 50

(Also reported in 694 N.W.2d 442.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Patrick C. Miller* of *Miller & Ogorchock, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Philip C. Reid* and *Lauri Schumacher* of *Cook & Franke S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Roger A. and Kim Praefke appeal from a judgment entered after the trial court granted summary judgment in favor of Sentry Insurance Company. The trial court held that the Praefkes' motor vehicle was not an "underinsured motor vehicle" as that term was defined by their insurance policy and that the reducing clause found within the UIM endorsement was unambiguous. The Praefkes claim that the trial court erred in making both determinations and seek reversal of the trial court's judgment. Because the trial court's analysis was correct on both issues, we affirm.

## BACKGROUND

¶ 2.    On October 3, 2001, Roger Praefke was driving his own motor vehicle when an accident occurred involving an automobile driven by Thomas Grandstaff. There is no dispute that Grandstaff was negligent and that Praefke was seriously injured as a result of the accident. Praefke underwent many surgical procedures and incurred medical bills in excess of $400,000. Connor Rose, a passenger in Grandstaff's vehicle, was killed in the accident.

¶ 3.    Grandstaff's vehicle was insured by Hawkeye-Security Insurance Company with a $100,000 combined single liability limit. The entire limit was paid out, with $75,000 going to Praefke, and $25,000 going to the estate of Connor Rose. At the time of the accident, Praefke carried automobile insurance with Sentry. His policy provided underinsured motorist coverage in the amount of $100,000 per person; $300,000 per accident. The Sentry policy defined underinsured motor vehicle as: "An underinsured *motor vehicle* is a *motor vehicle* with liability protection afforded by liability insurance policies or bodily injury liability bonds with limits the sum of which are less than the limits *you* have selected for underinsured motorists coverage as shown on the declarations page."

¶ 4.    The UIM endorsement also contained a reducing clause. The parties filed motions seeking rulings from the trial court as to whether the Grandstaff vehicle was an underinsured motor vehicle and whether the reducing clause was valid. The trial court determined that the Grandstaff vehicle did not satisfy the policy definition of underinsured motor vehicle because the liability limit of $100,000 was not less than the UIM $100,000 limit. The trial court also concluded that the

reducing clause was not contextually ambiguous. Judgment was entered. The Praefkes now appeal.

## DISCUSSION

¶ 5.   This case arises from a declaratory judgment which is addressed to the discretion of the trial court. *See Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. When the exercise of discretion depends upon a question of law, however, we review the question independently. *Id.* In this case, the issue involves interpretation of an insurance contract, which is a question of law. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. If an insurance policy is ambiguous as to coverage, it will be construed in favor of the insured. *Id.*, ¶ 16. Provisions in an insurance policy are ambiguous if the language is "susceptible to more than one reasonable interpretation." *Id.*, ¶ 13 (citation omitted).

¶ 6.   Before addressing the issue, we set forth an overview of UIM coverage. There are two schools of thought regarding UIM coverage. *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 16, 275 Wis. 2d 35, 683 N.W.2d 75. Under the older view, UIM coverage was seen as a benefit to " 'compensate an insured accident victim when the insured's damages exceed the recovery from the at-fault driver (or other responsible party).' " *Id.* (citation omitted). In other words, under this view, the entire UIM limit was available to the insured as "excess coverage."

¶ 7.   The more contemporary view presents UIM coverage as an amount " 'to put the insured in the same position as he [or she] would have occupied had the tortfeasor's liability limits been the same as the under-

insured motorist limits purchased by the insured.' " *Id.*, ¶ 17 (citation omitted). In other words, it is a " 'predetermined, fixed' " sum "made up of payments from both policies." *Id.* (citations omitted). In this scenario, the reducing clause operates to reduce policy limits to reach the "predetermined, fixed" sum.

■

¶ 8.   In 1995, our legislature enacted law recognizing the legitimacy of the latter type of policy. *See* Wis. Stat. § 632.32(5)(i). Likewise, courts began to acknowledge the same. *State Farm*, 2004 WI 113, ¶ 18. In determining whether a particular policy offers the older type of UIM coverage or the newer type of UIM coverage, the court must look to the language of the policy.

¶ 9.   The first place to look to is the definition of "underinsured motor vehicle." An insurer may "define 'underinsured motor vehicle' to reflect either the first [older] or second [modern] view of UIM coverage." *Id.*, ¶ 19. "The most crucial difference is whether the definition is based on the underinsured motorist motor vehicle policy *limits* or on the *damages* sustained by the insured." *Id.* (citation omitted; emphasis added). If the definition is based on the insured's *damages,* the insured would expect the UIM coverage to conform to the old view of UIM coverage. *Id.*, ¶ 20. The insured would expect that his or her UIM coverage would operate as excess coverage above the amount recovered from the tortfeasor.

> That is, since the policy considers a vehicle "under"-insured when the tortfeasor's liability coverage is inadequate to fully compensate the insured, the insured could reasonably expect that the entire available limit of the policy would be available to cover part or all of the difference between the tortfeasor's liability limits and the insured's damages.

*Id.*, ¶ 20.

¶ 10.  If, however, the "UIM policy defines an 'underinsured motor vehicle' by comparing the tortfeasor's limits of liability to the insured's limits of UIM coverage, the insured ought reasonably to expect that the second, more common, view of UIM coverage is in effect." *Id.*, ¶ 21. That is, this language clearly indicates to the insured that the UIM coverage will be "the difference between the insured's higher UIM limit and the tortfeasor's lower liability limit." *Id.*

▇

¶ 11.  A review of the Praefkes' insurance policy reveals that this case involves the newer, more modern view of UIM coverage as the policy refers to *limits* comparison, rather than *damages*. Accordingly, the Praefkes' reasonable expectation should be that the UIM coverage will apply *only if* the tortfeasor's liability limit is *less than* the $100,000 in UIM coverage provided in the Sentry policy they purchased.

▇

¶ 12.  The first step in every UIM coverage case is to start with the language of the policy and determine whether the tortfeasor's car satisfies the definition of underinsured motor vehicle. Here, the Praefkes contend that the Grandstaff vehicle satisfies the definition of underinsured motor vehicle as that term is used in the Sentry insurance policy. They argue that because Mr. Praefke could only recover $75,000, that amount should be the number used when doing the UIM comparison. In other words, his UIM limit of $100,000 should be compared to the $75,000 that he actually recovered from Grandstaff's liability insurer. Although this argument may be logically appealing at first, it

331

cannot withstand close scrutiny given the language of the policy and the lack of any case law to support such an argument.

¶ 13. First, the language of Sentry's insurance policy defining an underinsured motor vehicle is clear: the court must apply the *limit* of the liability policy to the *limit* of the UIM coverage purchased. A plain application of that language results in the conclusion reached by the trial court—the Grandstaff vehicle was not an underinsured motor vehicle because the liability limit and the UIM limit were the same.

¶ 14. Although this court can certainly understand the Praefkes' frustration with this result, our review is limited to interpreting the existing language; we do not have the authority to rewrite it. It is an often-used adage that tough facts make bad law. These are tough facts—but for the unfortunate fact that a second claimant also needed to be compensated, Praefke would have received the entire $100,000 liability limit. To accept the Praefkes' position, however, would result in bad law and create opportunity for manipulation and unpredictability. The case law has consistently performed the UIM analysis by comparing the limit of the liability policy to the limit of the UIM coverage, assuming of course that the policy at issue uses limits language. In the instant case, that analysis resulted in the conclusion that the Grandstaff vehicle was *not* underinsured and therefore, the Praefkes' UIM coverage was not available.

¶ 15. We are further not persuaded by the Praefkes' argument that the $100,000 combined single liability limit is *different* from his UIM $100,000 limit because his UIM policy also provides $300,000 UIM coverage *per accident*. In other words, he is arguing the limits are not the same because the liability policy did

not offer a greater amount of coverage *per accident*. We reject his contention. There is no case law that holds the comparison must be with both combined and split limits or per person/per accident limits. Further, it is not unusual to have a factual scenario where one insurance policy has split limits and the other has a single limit. It is important for this court to engage in the correct comparison—here, it was comparing the limit of the liability policy of $100,000 to the limit of the UIM coverage of $100,000.[1]

¶ 16.   The *Filing v. Commercial Union Midwest Insurance Co.*, 217 Wis. 2d 640, 579 N.W.2d 65 (Ct. App. 1998) case, which Praefke cites in support of his argument, actually refutes his interpretation. In *Filing*, Richard Filing was driving his automobile with three family members as passengers. *Id.* at 643. He was struck by a vehicle operated by Gregg Gulbrand. *Id.* At the time of the accident, Gulbrand carried split liability limits of $100,000 per person; $300,000 per accident with American Family Insurance Company. *Id.* Filing was insured with Commercial Union and carried a single limit of $300,000 in UIM coverage. *Id.* Commercial Union argued that its single limit of $300,000 should be compared to the $300,000 *per accident* liability limit, resulting in the conclusion that the limits are the same and therefore the Gulbrand vehicle did not constitute an underinsured motor vehicle. *Id.* at 647. The Filings argued that the single UIM limit of $300,000 should be compared to the $100,000 *per*

---

[1] This was not a situation where the $300,000 per accident UIM limit would apply. There was only one UIM insured involved—Mr. Praefke. Thus, the $100,000 single person limit was the correct figure used.

*person* liability limit; thus, resulting in the conclusion that the car did qualify as an underinsured motor vehicle. *Id.* at 644.

¶ 17.   We held that the correct comparison would be to compare the $100,000 per person liability limit to the $300,000 single UIM limit. *Id.* at 649–50. Thus, we concluded in *Filing* that the motor vehicle did constitute an underinsured motor vehicle. *Id.* at 649–51. Specifically, we reasoned:  "[W]e must look at what limit the individual insured *could* recover from the negligent driver's liability policy and compare that amount to the limit of the UIM policy in order to determine whether the negligent driver's vehicle is an 'underinsured motor vehicle.' " *Id.* at 649–50 (emphasis added). This language is consistent with our conclusions in the instant case. We looked to the limit that Praefke *could* have (not what he actually) recovered under the liability policy, which was $100,000. We compared that limit with the limit of the UIM policy, which also was $100,000. Because these limits are the same, the tortfeasor's vehicle does not qualify as an underinsured motor vehicle and the UIM coverage does not apply.

¶ 18.   Because we have concluded that the vehicle involved here does not constitute an underinsured motor vehicle, it is not necessary for us to address whether the UIM endorsement is contextually ambiguous. If there is no underinsured motor vehicle, the UIM endorsement does not apply. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

*By the Court.*—Judgment affirmed.