Shayna M. Gresens, Plaintiff-Respondent,

v.

State Farm Mutual Automobile Insurance
Company, Defendant-Appellant,†

Joseph Williams, American Standard Insurance
Company, Midwest Communications, Inc. and
IFC Holdings, Inc., Defendants.

Court of Appeals

*No. 2005AP2574. Submitted on briefs September 25, 2006.
—Decided October 10, 2006.*

2006 WI App 233

(Also reported in 724 N.W.2d 426.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Claude J. Covelli* of *Boardman, Suhr, Curry & Field, LLP* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Virginia M. Antoine* of *Habush Habush & Rottier, S.C.* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. State Farm Mutual Automobile Insurance Company appeals a judgment declaring Shayna Gresens entitled to $50,000 under the underinsured motorist (UIM) portion of her policy. Because the reducing clause excluding payment is ambiguous when viewed in the context of the entire policy, we affirm the judgment.

## BACKGROUND

¶ 2. On March 31, 2001, Shayna Gresens was injured in an automobile accident. Gresens was a passenger in a vehicle driven by her husband James Gresens. Their vehicle collided with a vehicle driven by Joseph Williams. At the time of the accident, the Gresenses were covered by a State Farm policy with liability and UIM limits of $250,000 and $100,000[1]

---

[1] Those limits are the "each person" limits, which are the applicable limits here.

respectively. Williams was covered by a $50,000 liability policy issued by American Standard Insurance Company.

¶ 3. American Standard paid its policy limit in exchange for a *Pierringer*[2] release of itself and Williams. State Farm and Gresens went to trial. At trial, the jury determined that James was forty percent causally negligent and that Williams was sixty percent causally negligent. The jury determined that Gresens' total damages were $263,100. This meant James was responsible for $105,240 and Williams was responsible for $157,860.

¶ 4. State Farm paid Gresens the $105,240 due as James's liability insurer. However, it argued no money was due under her UIM policy because both the $50,000 paid by American Standard and the $105,240 paid on behalf of James were to be deducted from her $100,000 UIM limit. Gresens argued $50,000 was still available under the UIM policy because only the American Standard payment was to be deducted from her UIM limit.

¶ 5. The circuit court agreed with Gresens. The court held State Farm's reducing clause was contextually ambiguous as to whether the payment made on behalf of James could be deducted from its UIM limits. The court therefore granted Gresens' motion for a declaratory judgment that $50,000 was available under State Farm's UIM limits.

### Standard of review

¶ 6. The meaning of an insurance contract is a question of law that we review without deference to the circuit court, but benefiting from its analysis. *American*

---

[2] *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

## DISCUSSION

¶ 7. The parties dispute the function of the State
Farm UIM policy. State Farm argues that its policy
simply provides its insured with a "predetermined, fixed
level of overall protection" against injuries. That is, the
UIM policy guarantees that if an insured is injured, the
insured's total available recovery, from all responsible
parties, is at least the insured's UIM limit. Here, the
policy guarantees at least $100,000 to cover injuries
caused by other tortfeasors. Because Gresens received
over $100,000 from Williams and James, State Farm
contends no UIM coverage is available.

¶ 8. Gresens, on the other hand, argues the policy
can be read to put her in the same position as if other
liable parties had a certain level of available liability
insurance. She argues that here, the State Farm policy
supplements her recovery from Williams to put her in
the same position as if Williams had had available
liability coverage with Gresens' $100,000 UIM limit.
Because Williams's limit was $50,000, Gresens contends
the UIM policy provides an additional $50,000 in cov-
erage for injuries caused by Williams.[3]

¶ 9. We agree with Gresens. While State Farm's
reducing clause, read alone, may well unambiguously
lower Gresens' policy limits based on payments made on

---

[3] Gresens also contends that WIS. STAT. § 632.32(5)(i)
(2003–04) prohibits State Farm from drafting a UIM policy that
functions as State Farm claims its policy does. Because we
construe State Farm's policy to provide coverage as if Williams
had had a certain level of coverage, we need not address this
contention.

behalf of James, language elsewhere in the policy supports Gresens' interpretation. We therefore conclude that the policy is contextually ambiguous and construe the ambiguity against State Farm.

¶ 10. A contextual ambiguity exists when a clear and unambiguous provision is ambiguous in the context of the entire policy. *Folkman v. Quamme*, 2003 WI 116, ¶ 19, 264 Wis. 2d 617, 665 N.W.2d 857. A contextual ambiguity exists when organization, labeling, explanation, inconsistency, omission, and/or text of other provisions in the policy render an otherwise clear provision ambiguous. *Id.*, ¶¶ 19–20. When such an ambiguity exists, it will be construed against the drafter. *Id.*, ¶¶ 13, 16.

¶ 11. The test for contextual ambiguity is whether an inconsistency is material to the dispute and "engender[s] an objectively reasonable alternative meaning and, thereby, disrupt[s] an insurer's otherwise clear policy language." *Id.*, ¶¶ 30, 32. Policy language leading to contextual ambiguity in other cases includes:

> (1) A definition of coverage that granted coverage in some instances where no payment would actually be made because of the reducing clause. This definition implied more than the policy delivered. *Folkman*, 264 Wis. 2d 617, ¶ 54.

> (2) A reducing clause with an effect made clear only in the reducing clause itself. *Id.*, ¶ 52.

> (3) A declarations page that contained no indication that policy limits were subject to conditions and exceptions set forth later in the policy. *Dowhower v. Marquez*, 2004 WI App 3, ¶ 20, 268 Wis. 2d 823, 674 N.W.2d 906.

228

¶ 12. The State Farm policy in this case suffers from all of these flaws. Most importantly, its definition of coverage conflicts with its reducing clause. State Farm defines its UIM coverage as follows:

> [State Farm] will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle*.
>
> . . . .
>
> [An] *Underinsured Motor Vehicle*—means a land motor vehicle:
>
> . . . .
>
> . . . whose limits of liability for bodily injury liability
>
> (a) are less than the limits of liability of this coverage; or
>
> (b) have been reduced by payments to *persons* other than the *insured* to less than the limits of this coverage.

The reducing clause, as relevant here, provides:

> The most [State Farm] will pay is . . .
>
> . . . the limits of liability of this coverage reduced by . . .
>
> . . . the amount paid to the *insured* by or on behalf of any *person* or organization that may be legally responsible for the *bodily injury*.

¶ 13. State Farm's definition of UIM coverage promises more than it argues the policy delivers. It promises that State Farm will pay damages an insured is legally entitled to collect from a motorist whose limits

of liability are less than the limits of the State Farm UIM coverage. Because of the reducing clause, however, this promise is a misleading one. There are many instances, including here, where an insured is legally entitled to collect damages from a motorist whose limits of liability are less than the limits of the State Farm policy. Under the policy definition of coverage, State Farm will pay damages in that situation. Yet under State Farm's UIM reducing clause, State Farm will pay nothing.

¶ 14. State Farm cites *Praefke v. Sentry Ins. Co.*, 2005 WI App 50, 279 Wis. 2d 325, 694 N.W.2d 442, for the proposition that Gresens should have known the policy had a reducing clause. However, *Praefke* involved the definition of "underinsured motorist" in the Sentry policy. *Id.*, ¶ 13. It did not address contextual ambiguity where policy language defining an underinsured motorist conflicted with a reducing clause. *See id.*, ¶ 18.

¶ 15. State Farm's policy claims to provide underinsured motorist coverage. However, the policy will pay nothing in many instances where injuries are caused by an underinsured motorist. Such a drastic change from the ordinary expectations of a reasonable insured cannot be buried in one sentence in the section of the policy dealing with limits of liability. Absent some clue directing the insured to that sentence, an insured could reasonably rely on State Farm's statement that it "will pay damages an insured is legally entitled to collect from" an underinsured motorist.

¶ 16. State Farm's policy also includes other textual clues that could lead a reasonable insured to find coverage. First, like the effect of the reducing clause discussed in *Folkman,* the effect of the reducing clause

in the State Farm policy is made clear only in the clause itself. Nothing in the definition of UIM coverage, the index, or the declarations page indicates that a clause reducing the policy limits based on payments from other sources exists. *See Folkman*, 264 Wis. 2d 617, ¶ 52.

¶ 17. In addition, like the declarations page in *Dowhower*, State Farm's declarations page did not note that the policy limits were subject to conditions and exceptions set forth later in the policy. *Dowhower*, 268 Wis. 2d 823, ¶ 20. State Farm's declarations page states that coverages are "as defined in policy." However, this statement is different from a statement that the limit of liability listed on the declarations page may be reduced by language elsewhere in the policy.

¶ 18. We therefore conclude the State Farm reducing clause is contextually ambiguous, and affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.