**2022 WI App 28**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2020AP1833

Complete Title of Case:


       **TERRY WIEGERT AND DEBORAH WIEGERT,**

          **PLAINTIFFS,**

     **V.**

       **TM CARPENTRY, LLC, STATE FARM FIRE & CASUALTY COMPANY
       AND AUTO-OWNERS INSURANCE,**

          **DEFENDANTS,**

       **STONE CREEK BUILDERS, LLC,**

          **DEFENDANT-THIRD-PARTY
          PLAINTIFF-APPELLANT,**

     **V.**

       **TIMOTHY BALTHAZOR D/B/A TIM BALTHAZOR MASONRY AND SECURA
       INSURANCE, A MUTUAL COMPANY,**

          **THIRD-PARTY DEFENDANTS,**

       **ACUITY, A MUTUAL INSURANCE COMPANY,**

          **INTERVENOR-RESPONDENT.**


Opinion Filed:         May 4, 2022
Submitted on Briefs:   October 26, 2021
Oral Argument:

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:     On behalf of the defendant-appellant, the cause was submitted on the briefs of *Erik Fuehrer* of *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton.

Respondent
ATTORNEYS:     On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christine Marie Rice* of *Simpson & Deardorff, S.C.,* Milwaukee.

COURT OF APPEALS
DECISION
DATED AND FILED

May 4, 2022

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     2020AP1833

Cir. Ct. No.  2015CV363

STATE OF WISCONSIN

IN COURT OF APPEALS

---

TERRY WIEGERT AND DEBORAH WIEGERT,

    PLAINTIFFS,

  V.

TM CARPENTRY, LLC, STATE FARM FIRE & CASUALTY COMPANY AND AUTO-OWNERS INSURANCE,

    DEFENDANTS,

STONE CREEK BUILDERS, LLC,

    DEFENDANT-THIRD-PARTY
    PLAINTIFF-APPELLANT,

  V.

TIMOTHY BALTHAZOR D/B/A TIM BALTHAZOR MASONRY AND SECURA INSURANCE, A MUTUAL COMPANY,

    THIRD-PARTY DEFENDANTS,

ACUITY, A MUTUAL INSURANCE COMPANY,

    INTERVENOR-RESPONDENT.

APPEAL from an order of the circuit court for Sheboygan County: DANIEL J. BOROWSKI, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1     NEUBAUER, J.   Stone Creek Builders, LLC, (Stone Creek) appeals from an order of the circuit court granting a motion for summary judgment in favor of Acuity, A Mutual Insurance Company (Acuity).  The court ruled that Acuity had no duty to indemnify its insured, Stone Creek, against claims asserted by Terry and Deborah Wiegert which arise out of renovation work Stone Creek performed on the Wiegerts' home.  The court determined that any damage alleged to have occurred during the Acuity policy period could only have arisen out of Stone Creek's work in raising the house off its foundation to increase the height of the basement, and that the contractual scope of Stone Creek's work explicitly included lifting the house.  The court concluded that any damages arising from liability caused by lifting the home would fall within a "business risk" exclusion (the "k.(5) exclusion") in the Acuity policy that bars coverage for "[p]roperty damage" to "[t]hat particular part" of real property upon which an insured "is performing operations, if the property damage arises out of those operations."  We agree.  Though we are obliged to construe the phrase "[t]hat particular part" narrowly, here the entire house constituted "[t]hat particular part" of the real property on which Stone Creek was

working because Stone Creek's contract required it to lift the entire house off the foundation. We affirm.[1]

## BACKGROUND

¶2      The following undisputed facts were submitted to the circuit court on motions for summary and/or declaratory judgment filed by the insurers.

### I.      The Renovation Project

¶3      The Wiegerts decided to undertake certain renovations to their two-story home in the City of Sheboygan, including increasing the floor-to-ceiling height of the basement. In July 2014, the Wiegerts entered into a contract with TM Carpentry, LLC (TM) for the renovation. The contract called for TM to increase the height of the basement by removing the existing floor, excavating several inches of dirt below it, and pouring a new concrete floor. TM performed some of the excavation and other work but abandoned the project before its work was complete.

¶4      After TM left the job, the Wiegerts hired an engineering firm to inspect the basement and make recommendations to address the issues allegedly resulting from TM's work. After receiving the engineer's recommendations, the Wiegerts hired Stone Creek to do further renovation work.

---

[1] In its comprehensive decision, the circuit court analyzed other provisions in the Acuity policy, including the terms "occurrence" and "property damage" in the insuring agreement, as well as multiple exclusions. Because we agree with the court's analysis of the k.(5) exclusion, we need not address the applicability of the other policy provisions and exclusions raised by Acuity. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not reach other issues).

¶5      On October 21, 2014, the Wiegerts entered into a contract with Stone Creek to finish the renovation project.  Stone Creek's scope of work was set forth in a "Budgetary Proposal" and included the following:

(1) Removing basement ceiling, fixtures, and the basement stairway;

(2) Disconnecting electrical circuits and other utilities;

(3) Lifting the house and porch approximately three feet above the existing foundation;

(4) Installing two courses of concrete block on top of the existing foundation;

(5) Lowering the house onto the newly raised foundation;

(6) Installing new window openings including headers;

(7) Reinstalling mechanical services to the house; and

(8) Rebuilding the basement staircase.

Stone Creek subcontracted with Timothy Balthazor, d/b/a Tim Balthazor Masonry (Balthazor), to install the additional concrete block.

¶6      Stone Creek began its work in October 2014.  Between October 27 and October 29, 2014, Stone Creek removed the basement staircase and ceiling, disconnected the utilities, and cut access holes in the existing foundation.  On October 29, Stone Creek raised the house several feet above the existing foundation. The new courses of concrete block were installed between November 5 and November 19, 2014.  Stone Creek lowered the house onto the new foundation on November 18 or 19 and performed additional work on the house from that date through mid-February 2015.

¶7     The Wiegerts noticed damage to the house during the three-week period in which it was elevated. Mrs. Wiegert noticed cracks developing in the walls of the house almost immediately after Stone Creek lifted it on October 29. The Wiegerts also noticed gaps between the baseboard and shoe molding in one room, as well as separation and unevenness in the wood floors on the main and second floors. The Wiegerts observed additional cracking in the walls and other structural issues after the house was lowered onto the foundation on November 19, 2014.

## II.     The Acuity Policy

¶8     TM, Stone Creek and Balthazor were insured under separate policies of insurance during the periods of time that they worked on the project.[2] Stone Creek was insured under two policies, each of which covered a portion of the period in which Stone Creek's work was performed. Acuity issued a "Bis-Pak" policy of business liability insurance to Stone Creek with a policy period of November 7, 2013 to November 7, 2014. Stone Creek's other insurer, Auto-Owners Insurance, issued a policy of commercial general liability insurance to Stone Creek that was in effect from November 7, 2014, to November 7, 2015.

¶9     The Acuity policy contains several provisions relevant to this appeal. The policy contains an insuring agreement under which Acuity agreed to pay amounts that Stone Creek "becomes legally obligated to pay as damages because of … *property damage* … to which this insurance applies." The Acuity policy applies

---

[2] TM was insured under a policy issued by State Farm Fire and Casualty Company. Balthazor was insured under a policy issued by Secura, A Mutual Company.

to "property damage" that (1) occurs during the policy period and (2) is caused by an "occurrence."[3]

¶10    The "property damage" exclusion at issue reads as follows:

**This insurance does not apply to:**

….

k.  Damage to Property

*Property damage* to:

….

(5)  That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations.

## PROCEDURAL HISTORY

¶11    In June 2015, the Wiegerts sued TM, Stone Creek, and their insurers, seeking to recover for the physical damage to, and loss of use of, their house.  As summarized by the circuit court, the Wiegerts claimed that Stone Creek "caused significant physical damage to the [house] including cracking of the interior walls and unevenness in the wood flooring" throughout the house.

¶12    Acuity was not originally a party to the action but filed a motion to intervene, which the circuit court granted.  Acuity also moved the court for an order "bifurcating litigation of the underlying merits from insurance coverage issues" and

---

[3]  As relevant here, the policy defines "[p]roperty damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  An "[o]ccurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

"staying proceedings on the merits until all insurance coverage issues have been decided." The court granted this motion on October 5, 2015, but allowed the parties to conduct discovery during the stay as to coverage issues.[4] Acuity served written discovery on the Wiegerts seeking information regarding the work Stone Creek performed and the damage to the Wiegerts' home that allegedly occurred during Acuity's policy period.

¶13 After Acuity and the other insurers filed motions asking the circuit court to find or declare that they had no duty to defend or indemnify their respective insureds against the Wiegerts' claims, the parties deposed Mr. and Mrs. Wiegert. The circuit court held oral argument on the motions on January 4, 2017, at the end of which it invited the parties to submit additional legal authorities analyzing the insurance coverage issues that had been raised in the motions in the context of contracted work to raise a house off its foundation.

¶14 In its decision and order, the circuit court agreed with Acuity that the k.(5) exclusion precluded coverage for the Wiegerts' claimed damages that arguably occurred within Acuity's policy period. The court's decision rested on three determinations: (1) Stone Creek was working on "real property"—the Wiegerts' house—when the alleged property damage occurred; (2) the entire house constituted the "particular part" of the real property on which Stone Creek was working because Stone Creek's contract required it to lift the entire house off the foundation; and (3) the claimed property damage "was caused by Stone Creek's actions in lifting the entire Residence off of the foundation and vertically supporting it."

---

[4] The Hon. James J. Bolgert entered the stay order.

7

¶15     As to the third point, the circuit court noted Mrs. Wiegert's testimony that she observed cracking and other damage in the house immediately after it was lifted, and recognized that Acuity's coverage obligation was limited to "property damage" that occurred during its policy period:

> Under the plain language of Acuity's policy, there is no coverage for events that occurred after Acuity's policy expired. Again, the only conceivable occurrence and property damage under Acuity's policy occurred as a result of lifting the Residence. Stone Creek's lift of the Residence was the only work that was completed during Acuity's policy period. While Stone Creek may have commenced the masonry work, there is no indication that the work was complete during Acuity's policy or that such work resulted in an occurrence and property damage to the Residence during Acuity's policy period.

¶16     The circuit court also implicitly rejected Stone Creek's contention, raised in its post-hearing submission, that the ruling would be premature, effectively determining that additional discovery as to whether damages were caused by work performed by TM Carpentry, or by work performed by Balthazor and/or Stone Creek after Acuity's policy period, would not be relevant to the coverage determination. Based upon these determinations, the court granted Acuity's motion.[5]

¶17     Stone Creek appeals. We include additional facts as necessary in the discussion below.

---

[5] The circuit court also granted the motion filed by TM's insurer, State Farm, but it denied the motions filed by Auto-Owners, Stone Creek's other insurer, and Secura, Balthazor's insurer.

8

## DISCUSSION

### I.      Applicable Legal Standards

¶18     Liability insurance policies typically impose two main duties—the duty to defend against claims for damages and the duty to indemnify, or "cover," the insured against damages or losses.  ***Johnson Controls, Inc. v. London Mkt.***, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579.  "The duty to indemnify and the duty to defend are separate contractual obligations."  ***Id.***  Though Acuity sought rulings as to both duties, the circuit court specifically concluded that the "property damage" exclusion at issue here barred coverage for the Wiegerts' claimed damages.  Thus, only the question of whether Acuity has a duty to indemnify—the coverage issue—is before us on appeal.[6]

¶19     The circuit court granted what it referred to as "Summary/Declaratory Judgment," concluding that Acuity did not have a duty to indemnify Stone Creek for any of the damage done to the Wiegerts' house.  Insurers may seek determinations of their coverage obligations through summary judgment or declaratory judgment.  ***Young v. West Bend Mut. Ins. Co.***, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196.  Under either procedural vehicle, our standard of review is de novo because we must interpret and apply the terms of Acuity's policy.  ***Nischke v. Aetna Health Plans***, 2008 WI App 190, ¶4 & n.3, 314 Wis. 2d 774, 763 N.W.2d 554 (explaining that "our standard of review is the same for both

---

[6] Stone Creek devotes most of its discussion of the standard of review to the "four-corners" rule, which applies when a court examines whether an insurer has a duty to *defend* its insured against third-party claims.  ***Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.***, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285.  Here, however, Acuity agreed to defend Stone Creek under a reservation of rights and sought a determination of its coverage obligations.  In that scenario, Wisconsin courts are not constrained by the four-corners rule and may consider extrinsic evidence.  ***Olson v. Farrar***, 2012 WI 3, ¶34, 338 Wis. 2d 215, 809 N.W.2d 1.

situations"); ***Praefke v. Sentry Ins. Co.***, 2005 WI App 50, ¶5, 279 Wis. 2d 325, 694 N.W.2d 442 (though declaratory judgment is "addressed to the discretion of the trial court," appellate review is de novo when "the exercise of discretion depends upon a question of law" such as the "interpretation of an insurance contract").

¶20 "The methodology governing summary judgment is well-established and we need not repeat it in its entirety." ***Progressive N. Ins. Co. v. Jacobson***, 2011 WI App 140, ¶7, 337 Wis. 2d 533, 804 N.W.2d 838. Summary judgment shall be awarded if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2019-20).

## II.     Analysis of Coverage Under the Acuity Policy

¶21 Wisconsin's insurance coverage analysis would normally require us to first consider whether Acuity's policy makes an initial grant of coverage. *See* ***Olson v. Farrar,*** 2012 WI 3, ¶41, 338 Wis. 2d 215, 809 N.W.2d 1. Here, however, we assume without deciding that the circuit court correctly determined that the record supports an initial grant of coverage—that is, an "occurrence" which caused "property damage" during Acuity's policy period, which ended on November 7, 2014. We can make this assumption because, for the reasons explained below, we agree with the circuit court that any damages that may ultimately be awarded against Stone Creek for property damage that occurred before November 7 would fall within the scope of the k.(5) exclusion.

¶22 The k.(5) exclusion is one of the standard "business risk" exclusions in commercial general liability insurance (CGL) policies. ***Acuity v. Society Ins.***, 2012 WI App 13, ¶35, 339 Wis. 2d 217, 810 N.W.2d 812, *review granted*, 2012 WI 77, 342 Wis. 2d 155, 816 N.W.2d 321, <u>*voluntary dismissal granted*, 2013 WI 6, 345 Wis. 2d 406, 827 N.W.2d 98</u> ("The k.(5) exclusion, however, is commonly found

in CGL policies written after 1986 and courts from other jurisdictions have construed its precise terms in other policies."). Our supreme court has identified the underlying purpose of such policies as insuring against "the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable." *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶27, 233 Wis. 2d 314, 607 N.W.2d 276 (quoting *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 264-65, 371 N.W.2d 392 (Ct. App. 1985)). The business risk exclusions further this underlying purpose by "eliminat[ing] coverage for liability for property damage to the insured's own work or product." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶47, 268 Wis. 2d 16, 673 N.W.2d 65.

¶23 The k.(5) exclusion bars coverage for property damage to "[t]hat particular part" of real property on which an insured is performing operations, if the property damage arises out of the insured's operations. Our supreme court has not interpreted this exclusion to date, but we applied it in *Acuity v. Society Ins*. There, two contractors entered into a contract with a building owner to remove and replace a wall in the engine room of an animal processing plant. *Acuity v. Society Ins.*, 339 Wis. 2d 217, ¶2. During excavation work near the wall, soil began to erode from under the concrete slab of the floor of the engine room, leading the slab to crack and deflect downward. *Id.*, ¶4. The damage to the floor, in turn, caused damage to other parts of the building, disrupted utility service, damaged equipment in the plant, and decreased the plant's refrigeration capacity. *Id.* Acuity, the building owner's insurer, settled the owner's insurance claim and brought an action in subrogation against the contractors and their insurer, Society. *Id.*, ¶¶7-8.

¶24    After concluding that the partial collapse of the engine room resulting from the contractors' faulty excavation techniques constituted an "occurrence" that led to "property damage" under Society's policy, we analyzed whether the k.(5) exclusion barred coverage for the insurer's losses.[7]  *Id.*, ¶33.  In particular, we focused on the phrase "that particular part" and, drawing on decisions from other jurisdictions analyzing the same policy language, determined that it limited the exclusion's reach to "those parts of a building on which the defective work was performed, which is determined based on the scope of the construction agreement." *Id.*, ¶40.  We recognized further that the inclusion of "[t]hat particular part" in the exclusion was intended to narrow our focus to the smallest component of the building on which the insured's work was performed.  *Id.*, ¶¶38-40 (citing *Fortney & Weygandt, Inc. v. American Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (describing "that particular part" as "trebly restrictive, straining to the point of awkwardness to make clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally")).  Viewed through this restrictive lens, we examined the contractors' contractual scope of work and found it limited to removal and replacement of one of the walls in the engine room.  *Acuity v. Society Ins.*, 339 Wis. 2d 217, ¶41.  Thus, the k.(5) exclusion did not bar coverage for damage to equipment and other parts of the building.  *Id.*, ¶¶41-42; *see also* *Henshue Constr., Inc. v. Terra Eng'g & Constr. Corp.*, No. 2012AP1038, unpublished slip op. ¶¶63-66 (WI App May 9, 2013) (applying *Acuity v. Society Ins.* and concluding exclusion inapplicable to costs to repair the

---

[7] The k.(6) exclusion was also at issue in *Acuity v. Society Ins.* and also appears in the Acuity policy at issue in the present case.  It excludes coverage for "[p]roperty damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  *Acuity v. Society Ins.*, 2012 WI App 13, ¶34, 339 Wis. 2d 217, 810 N.W.2d 812.  As noted above, in light of our conclusion that the k.(5) exclusion bars coverage for the Wiegerts' claimed damages, we need not reach the question of whether the k.(6) exclusion also precludes coverage.

steam system because scope of insured's work on construction project "included excavation and backfill of certain steam pits, but … did not include any work on the existing steam pit system that was damaged").

¶25 Applying *Acuity v. Society Ins.* here, we focus on the scope of Stone Creek's work as set forth in its contract with the Wiegerts. Among other things, Stone Creek's contract expressly required it to lift the Wiegerts' house off the existing foundation, install additional layers of concrete block, and lower the house onto the new foundation. Although certain line items in Stone Creek's contract specified work on components of the house, Stone Creek's contract clearly specified work—raising and lowering—to be performed on the entire structure.

¶26 We are also mindful that the Acuity policy limits Acuity's coverage obligation to "property damage" that occurred within the policy period, which ended on November 7, 2014. Between the start of Stone Creek's work in late October and November 7, Stone Creek (1) removed the basement ceiling and stairway; (2) cut access holes in the existing foundation; (3) disconnected electrical circuits and other utilities; and (4) raised the house approximately three feet above the foundation. The damage observed by Mrs. Wiegert "immediately" after the house was lifted was confined to interior portions of the house—walls, shoe molding, and floors.

¶27 Given these facts, we agree with the circuit court that the only work performed by Stone Creek that could possibly have resulted in "property damage" during the Acuity policy period was the lifting of the house. When Stone Creek raised the house off the foundation, "[t]hat particular part" of the Wiegerts' real property on which Stone Creek was performing operations was the entire house. Thus, any money damages awarded against Stone Creek for damage to the house that occurred before the end of the policy period on November 7 would fall within

the scope of the k.(5) exclusion. Our conclusion is consistent with decisions from other courts that have applied comparable standard k.(5) and (6) business risk exclusions to damages allegedly resulting from the lifting of a residence. *See Lafayette Ins. Co. v. Peerboom*, 813 F. Supp. 2d 823, 834 (S.D. Miss. 2011) (construing "that particular part" to apply to the entire residence where contractor's work involved raising residence above flood plain); *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶¶3, 25, 686 N.W.2d 118 (concluding that "that particular part" of house on which contractor was working when house fell off support jacks was the entire structure).[8]

¶28 Stone Creek's arguments to the contrary are not persuasive. First, Stone Creek contends that further discovery is needed to ascertain the smallest component of its work that could have damaged the house. Stone Creek posits that the damage to the house may have been caused by an event that took up no physical space—the decision to add courses of block to the top of the foundation. Though such a decision may have contributed to the damage, the damage would not have occurred unless Stone Creek implemented the decision by actually raising the house.

¶29 Next, Stone Creek suggests that improper installation of the new layers of concrete block may have destabilized the basement walls, in which case "[t]hat particular part" in the k.(5) exclusion would encompass only the foundation. This argument fails to account for the Acuity policy period, which ended on November 7, 2014. The undisputed facts show that the work to add new block onto the foundation began, but did not end, by November 7, and that Stone Creek did not lower the house onto the new foundation until at least November 18. Given the

---

[8] *Peerboom* and *Grinnell* were cited to the circuit court in submissions that it invited after oral argument on the insurers' motions.

timing of this work, any "property damage" resulting from improper installation of the new block would necessarily have occurred after the Acuity policy expired.

¶30 Stone Creek also argues that the k.(5) exclusion should not apply to damage to interior components of the house Stone Creek was not hired to work on. This ignores that Stone Creek's contract required it to lift the entire house, and the "property damage" allegedly arose out of that work. That Stone Creek's contract did not specifically require it to work on the walls, shoe molding, and floors observed to be damaged immediately after the house was lifted does not mean that the k.(5) exclusion cannot apply to damage to those components of the house.[9]

### III. Ripeness

¶31 Finally, we reject Stone Creek's contention that Acuity's motion was not ripe for decision because the stay on merits discovery precluded the parties from

---

[9] Stone Creek also argues that the circuit court's determination that the k.(5) exclusion barred coverage for property damage in Acuity's policy period cannot be reconciled with its determination that the same exclusion in the Auto-Owners policy (which was in effect from November 7, 2014 to November 7, 2015) did *not* preclude coverage for damages to the house that occurred *after* November 7. While this issue is not before us on appeal, we note that the court pointed to facts showing that damage after November 7 arose from work on the foundation and some windows (and not the lowering of the entire house), which would not necessarily be excluded from coverage because the exclusion only bars coverage for "[p]roperty damage" to "[t]hat particular part" of real property on which the insured is "performing operations, if the property damage arises out of those operations." In other words, coverage for the alleged damage-causing work on the foundation and windows at issue under the Auto-Owner's policy would only be excluded insofar as it occurred to the foundation and the windows. Applying the k.(5) exclusion to these facts led to a different—but not inconsistent—outcome.

uncovering facts material to liability/causation and damages, which Stone Creek views as material to application of the exclusion in Acuity's policy.[10]

¶32    As noted above, the facts material to the application of the k.(5) exclusion are:  (1) the relevant terms of the Acuity policy; (2) the terms of Stone Creek's contract with the Wiegerts; (3) the work performed by Stone Creek on the project; and (4) the damage to the house that arguably occurred within Acuity's policy period.  Based upon the materials submitted, if the Wiegerts ultimately prove that Stone Creek breached its contract and that breach resulted in damage to the house, the undisputed facts show that any "property damage" that occurred during Acuity's policy period necessarily resulted from Stone Creek's deficient performance in raising the house off its foundation.

¶33    Stone Creek contends that a coverage determination must await additional discovery on liability and damages, pointing to the possibility that some or all of the Wiegerts' claimed damages may be attributable to the work of TM, the first contractor to undertake renovations to the house, or the work on the foundation by Balthazor.  We do not see how further discovery on these points would alter the analysis under the k.(5) exclusion.  Any damages arising from the work of TM would precede Stone Creek's work, and there is no suggestion that Stone Creek would be liable for property damage caused by TM.  Any work on the foundation, and the allegedly resulting property damage, did not occur until after Acuity's policy period. \ Notably, Stone Creek does not identify anything in the record suggesting that the damage Mrs. Wiegert observed immediately after the house was lifted could

---

[10] Stone Creek cites *Stimac Family Trust v. Wisconsin Power & Light Co.* in support of this argument, but that case is materially distinguishable because, unlike here, the circuit court expressly declined to consider any extrinsic evidence in making its coverage determination. *Stimac Family Trust v. Wisconsin Power & Light Co.*, 2017 WI App 33, ¶12, 375 Wis. 2d 787, 896 N.W.2d 383.

have arisen out of any work Stone Creek performed on a "distinct component part[]" of the house, as opposed to the entire house itself. *See Acuity v. Society Ins.*, 339 Wis. 2d 217, ¶38 (citation omitted). Stone Creek does not argue that any part of the Wiegerts' property other than the house sustained damage during the Acuity policy period. Absent a showing that facts which could alter the analysis under the k.(5) exclusion have yet to be discovered, we conclude that the circuit court did not decide Acuity's motion prematurely.

## CONCLUSION

¶34    For the foregoing reasons, we affirm the circuit court's grant of summary judgment to Acuity. The pleadings and extrinsic evidence presented to the circuit court demonstrate that any damages that may ultimately be awarded against Stone Creek for property damage to the Wiegerts' house that occurred during Acuity's policy period would fall within the scope of the k.(5) exclusion in the Acuity policy. We further conclude that the circuit court did not err in not deferring a decision on Acuity's coverage obligation until merits discovery was completed.

*By the Court*.—Order affirmed.

17