# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP189 |

| | |
|---|---|
| COMPLETE TITLE: | ACUITY, a Mutual Insurance Co.,<br>            Plaintiff-Respondent-Petitioner,<br>    v.<br>Estate of Michael Shimeta and Terry Scherr,<br>            Defendants-Appellants,<br>Partners Mutual Insurance Co.,<br>            Intervening Defendant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 375, 965 N.W.2d 78
PDC No: 2021 WI App 64 - Published

| | |
|---|---|
| OPINION FILED: | April 7, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 30, 2022 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Jeffrey A. Conen |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, and DALLET, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Christine M. Rice, Nicole R. Radler,* and *Simpson & Deardorff, S.C.,* Milwaukee. There was an oral argument by *Christine M. Rice.*

For the defendants-appellants, there was a brief filed by *Brett A. Eckstein* and *Cannon & Dunphy, S.C.,* Brookfield. There was an oral argument by *Brett A. Eckstein.*

An amicus curiae brief was filed by *James A. Friedman, Daniel C.W. Narvey,* and *Godfrey & Kahn, S.C.,* Madison, for the Wisconsin Insurance Alliance.

An amicus curiae brief was filed by *Mark L. Thomsen, Lynn R. Laufenberg,* and *Gingras, Thomsen, & Wachs, LLP,* Madison, for the Wisconsin Association for Justice.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2020AP189
(L.C. No.  2019CV5402)

STATE OF WISCONSIN                 :          IN SUPREME COURT

ACUITY, a Mutual Insurance Co.,

      Plaintiff-Respondent-Petitioner,

  v.

Estate of Michael Shimeta and Terry Scherr,

      Defendants-Appellants,

Partners Mutual Insurance Co.,

      Intervening Defendant.

**FILED**

**APR 7, 2023**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, and DALLET, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined. HAGEDORN, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1  JILL J. KAROFSKY, J.  This case arises from a tragic automobile accident that occurred when Douglas Curley lost control of his vehicle, crossed the center line, and hit another vehicle, killing Michael Shimeta and seriously injuring his passenger, Terry Scherr.  As a result of the accident, Curley's

insurer paid Shimeta's estate (Shimeta) and Scherr $250,000 each. Shimeta and Scherr sought additional recovery under a policy that Acuity had issued to Shimeta prior to the accident. The policy included underinsured motorist (UIM) coverage with a $500,000 limit for "each person" and a $500,000 limit for "each accident." At issue in this case is whether Acuity's UIM coverage entitles Shimeta and Scherr to an additional $250,000 each from Acuity, or whether the payments Shimeta and Scherr received from Curley's insurer reduced their recovery to nothing. To resolve this issue, we must interpret the UIM policy's reducing clause, which states that "[t]he limit of liability shall be reduced by all sums . . . [p]aid because of the bodily injury by or on behalf of persons . . . who may be legally responsible."

¶2 We conclude that the reducing clause operates on an individual basis to reduce the $500,000 "each person" limit of liability by the $250,000 payment that Shimeta and Scherr each received from Curley's insurer. Consequently, Acuity owes Shimeta and Scherr $250,000 each. Accordingly, we affirm the court of appeals' reversal of the circuit court's[1] grant of declaratory judgment for Acuity.

## I. BACKGROUND

¶3 Michael Shimeta was tragically killed and Terry Scherr was severely injured on November 22, 2018 when Douglas Curley

---

[1] The Honorable Jeffrey A. Conen of the Milwaukee County Circuit Court presiding.

lost control of his pickup truck on Highway 10 in Portage County, crossed the center line, flipped in the air, and landed on top of Shimeta's Jeep. It is undisputed that Shimeta and Scherr's injuries met or exceeded $1 million in damages.

¶4 Curley was insured under an automobile liability insurance policy issued by Farmers Insurance Company. The policy provided coverage up to a $250,000 "per person" limit of liability, and a $500,000 "per accident" limit of liability. In accordance with this policy, Farmers paid Shimeta and Scherr $250,000 each.

¶5 Shimeta and Scherr were also covered under a UIM policy that Acuity issued to Shimeta. The policy's liability limits for UIM coverage are $500,000 for "each person" and $500,000 for "each accident." The policy includes a reducing clause that states: "[t]he limit of liability shall be reduced by all sums . . . [p]aid because of the bodily injury[2] by or on behalf of persons . . . who may be legally responsible."

¶6 The parties do not dispute that both Shimeta and Scherr were insured under the UIM policy. Nor do they dispute that Curley's truck was an "underinsured motor vehicle" as defined by the policy. In dispute is whether Acuity must still pay $250,000 each to Shimeta and Scherr, or whether the $500,000 in combined payments from Farmers reduced Acuity's policy limits to zero.

---

[2] In Acuity's policy, defined terms are in bold font. Those terms are underlined in this opinion.

¶7 Acuity filed an action for declaratory judgment, asking the circuit court to find that Acuity was not obligated to pay Shimeta and Scherr any UIM benefits under its policy because Shimeta and Scherr had already received a total of $500,000 from Farmers. The circuit court granted Acuity's motion, reasoning that Acuity's $500,000 maximum limit for "each accident" was reduced to zero by Farmers' combined payments to Shimeta and Scherr. The court of appeals reversed, concluding that the reducing clause operates on an individual basis to reduce the limit of liability for "each person" by the payment that "each person" insured under the policy received. We agree with the court of appeals and conclude that the clause reduces the "each person" limit by the payments an individual insured received for his or her injuries.

## II. ANALYSIS

¶8 This case requires the court to interpret the language of an insurance policy, which presents a question of law that we review de novo. Mau v. N.D. Ins. Rsrv. Fund, 2001 WI 134, ¶12, 248 Wis. 2d 1031, 637 N.W.2d 45.

¶9 Analyzing Acuity's UIM policy requires us to put the disputed UIM policy language in context. To do so, we first provide a brief overview of the purpose of UIM coverage and the principles we use when interpreting UIM policies. Next, we review the UIM policy language at issue in this case. We then conclude that the policy's reducing clause, when read in the context of the whole policy, reduces the limit of liability for "each person" by the payments received by each individual

4

insured. We further determine that the policy's "each accident" limit of liability serves as an additional backstop, establishing the maximum amount that Acuity will pay out for any one accident.

## A. UIM Background

¶10 As a general matter, the purpose of UIM coverage is to protect "persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of underinsured motor vehicles." Wis. Stat. § 632.32(2)(d) (2019-20).[3] This court has identified two approaches to UIM coverage, both of which are permissible under Wis. Stat. § 632.32(4m). Welin v. Am. Fam. Mut. Ins. Co., 2006 WI 81, ¶¶24-27, 292 Wis. 2d 73, 717 N.W.2d 690. Policies that follow the "separate fund" approach provide a set amount of coverage for the insured's damages that exceed the amount the insured recovers from the responsible party. State Farm Mut. Auto. Ins. Co. v. Langridge, 2004 WI 113, ¶16, 275 Wis. 2d 35, 683 N.W.2d 75. Policies that follow the "limits-to-limits" approach——like Acuity's policy——provide "a predetermined, fixed level of UIM recovery that is arrived at by combining payments from all sources" legally responsible for the insured's damages. Welin, 292 Wis. 2d 73, ¶49. To that end, Wis. Stat. § 632.32(5)(i) allows insurers to write UIM policies that "provide that the limits under the policy" shall

---

[3] All subsequent references to the Wisconsin Statutes are to the 2019-2020 version unless otherwise indicated.

be reduced by "[a]mounts paid by or on behalf of any person or organization that may be legally responsible for the bodily injury or death for which the payment is made."

¶11 While our UIM cases provide a helpful framework for interpreting policy language, we pause to note that a UIM policy is a contract, and "[w]here the language of the policy is plain and unambiguous, we enforce it as written . . . . This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake." Danbeck v. Am. Fam. Mut. Ins. Co., 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150 (internal citations omitted). We interpret the policy language as a reasonable insured would understand it, and if the language is ambiguous, we construe it in favor of the insured. Id. With these principles in mind, we turn to the language of the contract at issue in this case.

### B. Policy Language

¶12 We begin our review of the insurance policy by examining the Declarations page. We next look to the UIM grant of coverage, then we examine the definition of "underinsured motor vehicle," and finally we analyze the Limits of Liability section, which contains the reducing clause at issue in this case.

¶13 The policy's Declarations page lists the types of coverage the policy provides, including "Underinsured Motorists" coverage for "$500,000 Each Person" and "$500,000 Each Accident." The Declarations page does not provide any additional information about "Underinsured Motorists" coverage

6

or what "Each Person" or "Each Accident" mean, so we turn next to the Underinsured Motorists Coverage section in Part IV of the policy for further clarification.

¶14 The Underinsured Motorists Coverage section first includes the following grant of coverage:

> We [Acuity] will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Bodily injury must be sustained by an insured person and must be caused by accident and result from the ownership, maintenance, or use of the underinsured motor vehicle.

Acuity does not dispute that: (1) Shimeta and Scherr were legally entitled to recover at least $1 million in damages for bodily injury from Curley; (2) Shimeta and Scherr were both "insured persons" under Acuity's policy; and (3) Shimeta and Scherr sustained injuries that were caused by the accident. Having established that both Shimeta and Scherr meet the initial requirements set out in the grant of coverage, we next examine the policy's definition of "underinsured motor vehicle."

¶15 The policy defines "underinsured motor vehicle" as a vehicle covered by an insurance policy with a "limit for bodily injury liability" that is "less than the limit of liability for this coverage." Acuity does not dispute that Curley operated an "underinsured motor vehicle." Curley's automobile liability insurance provided coverage up to a $250,000 "per person" limit of liability and a $500,000 "per accident" limit of liability.

7

Under a split-limits policy[4] like Curley's, "an insured's objectively reasonable expectation is that the phrase 'limit for bodily injury liability' means the per person limit of a tortfeasor's liability policy." <u>Filing v. Com. Union Midwest Ins. Co.</u>, 217 Wis. 2d 640, 650, 579 N.W.2d 65 (Ct. App. 1998).

¶16 Although Acuity does not dispute that Curley is underinsured, it maintains that Shimeta and Scherr are not entitled to recover under the policy because, under the Limits of Liability section, the $500,000 in combined payments they received from Farmers reduced the policy limits to zero. The relevant portion of the Limits of Liability section is as follows:

> <u>Limits of Liability</u>
>
> <u>1.</u>   The Limit of Liability shown in the Declarations for each person for Underinsured Motorists coverage is <u>our</u> maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of <u>bodily injury</u> sustained by any one person in any one accident. Subject to this limit per person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorists coverage is <u>our</u> maximum limit of liability for all damages for <u>bodily injury</u> resulting from any one accident.
>
> This is the most <u>we</u> will pay regardless of the number of:
>
> a. <u>Insured persons</u>;
>
> b. Claims made;

---

[4] Policies with different per person and per accident limits are sometimes referred to as "split-limits" policies. <u>See</u> <u>Folkman v. Quamme</u>, 2003 WI 116, ¶7, 264 Wis. 2d 617, 665 N.W.2d 857.

c. Vehicles or premiums shown in the Declarations; or

d. Vehicles involved in the accident.

2.    The limit of liability shall be reduced by all sums:

a. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.  This includes all sums paid under Part I – Liability; and

b. Paid or payable because of the bodily injury under any of the following or similar law:

(1)  Workers' compensation law; or

(2)  Disability benefits law.

¶17  Paragraph 1 of this section defines the "each person" and "each accident" limits set out in the Declarations page, establishing that those limits are the maximum that Acuity will pay for any one person in an accident, and for any one accident, respectively.  Paragraph 1 also states that the "each accident" limit is subject to the "each person" limit.  Paragraph 2 includes a reducing clause providing that "the limit of liability" will be reduced by payments from those legally responsible for the insured's damages.

¶18  The parties agree that, under paragraph 1 and the limits set in the Declarations page, Acuity will never pay more than $500,000 to any individual insured for any one accident.  Additionally there is agreement that Acuity will never pay more than $500,000 total for any one accident, regardless of the number of insureds.  The parties' sole dispute is over the reducing clause in paragraph 2.

### C.  The Reducing Clause

9

¶19  The parties dispute the meaning of two separate, but related parts of the reducing clause: (1) "the limit of liability" and (2) "all sums . . . [p]aid because of the bodily injury."

¶20  Shimeta and Scherr argue that "the limit of liability" is the "each person" limit of liability.  Alternatively, they argue that "the limit of liability" is ambiguous because it does not specify which limit applies, and the court construes ambiguity in favor of the insured.  See Danbeck, 245 Wis. 2d 186, ¶10.  Acuity argues that "the limit of liability" could refer to either the "each person" or "each accident" limit, "depending on the facts of the case," and in this case it is the "each accident" limit.

¶21  Regarding the phrase, "all sums . . . [p]aid because of the bodily injury . . ." Shimeta and Scherr argue that it means all sums paid because of the bodily injury suffered by the individual insured making the claim.  Acuity argues that the phrase means all sums paid for all injuries suffered by any insureds injured in a single accident.

¶22  We agree with Shimeta and Scherr's interpretations and conclude that the reducing clause operates to reduce recovery on an individual basis.  That is, the reducing clause reduces the "each person" limit for an insured by all payments for the

insured's injury. To explain why, we will analyze the two phrases in turn.[5]

### 1. "The Limit of Liability"

¶23 We start with the phrase "the limit of liability." On first inspection, this phrase appears to be ambiguous. The policy has two limits of liability——indeed, this section is called "<u>Limits of Liability</u>," and paragraph 1 refers to the "each person" and "each accident" limit separately and in turn. But, unlike paragraph 1, the reducing clause does not specify whether "the limit of liability" refers to the "each person" limit or the "each accident" limit. Therefore, it is not immediately clear what "the limit of liability" means.

¶24 Ambiguity, as we have noted, is to be construed in favor of the insured. However, a phrase can seem ambiguous in isolation, but become unambiguous from the perspective of a reasonable insured when viewed within the context of a policy. See <u>Badger Mut. Ins. Co. v. Schmitz</u>, 2002 WI 98, ¶49, 255 Wis. 2d 61, 647 N.W.2d 223. Here, there are four possible interpretations of "limit of liability"——the phrase could mean:

---

[5] Although we analyze the two disputed phrases separately, we note that the phrases are interrelated and there are only two proposed readings of the clause as a whole. The first, favored by Shimeta and Scherr, is that the clause reduces the "each person" limit for an insured by all payments for the insured's injury. The second, favored by Acuity, is that the clause reduces the "each accident" limit by all payments made for all insureds' injuries. Neither party argues that the "each person" limit should be reduced by payments made on behalf of all insureds, or that the "each accident" limit should be reduced by payments made on behalf of just one insured.

(1) both the "each person" and the "each accident" limit; (2) either the "each person" or the "each accident" limit depending on the facts of the case; (3) only the "each person" limit; or (4) only the "each accident" limit. We analyze each of these four possible interpretations and conclude that the phrase unambiguously refers to only the "each person" limit.

¶25 We first consider whether "the limit of liability" could mean both the "each person" and the "each accident" limit. In doing so we immediately see that "the limit of liability" (emphasis added) is phrased in the singular, rather than plural. The "common and ordinary meaning" of the singular term "the limit of liability" is one particular limit, rather than more than one. See Danbeck, 245 Wis. 2d 186, ¶10, ("The words of an insurance policy are given their common and ordinary meaning"); see also Filing, 217 Wis. 2d at 650 (holding that an unspecified "limit for bodily injury liability" in an Underinsured Motorist definition referred to the "per person" limit, rather than both limits). From a reasonable insured's point of view, the limit would refer to a singular limit of "each person" or "each accident," not both.

¶26 If Acuity meant to refer to more than one limit, it could use the word "limits," as it did in the title of the section ("Limits of Liability"). Wisconsin Stat. § 632.32(5)(i), which authorizes insurers to use reducing clauses in their UIM policies, also uses the plural form

12

"limits."[6] Because Acuity did not refer to the plural form "limits," an insured is likely to understand that the reducing clause is referring to only one limit.

¶27 We next consider whether "the limit of liability" in the reducing clause refers to either the "each person" limit or "each accident" limit depending on the facts of the case. Acuity argues, "[w]hen there is more than one injured insured, paragraph 1 dictates that the 'limit of liability' to be reduced is the each accident limit." But neither paragraph 1 nor the reducing clause actually say that the limit of liability to be reduced changes depending on the number of injured insureds, and Acuity has not pointed us to anywhere else in the policy that does so.[7]

---

[6] Wisconsin Stat. § 632.32(5)(i) states that "A policy may provide that the limits under the policy for uninsured motorist coverage or underinsured motorist coverage for bodily injury or death resulting from any one accident shall be reduced by any of the following that apply" (emphasis added).

[7] The dissenting opinions assert that paragraph 1 of the Limits of Liability section establishes that the "limit of liability" is used in the singular to denote the most Acuity will pay depending on the number of insureds and chosen coverages. See Chief Justice Ziegler's dissent, ¶50; Justice Hagedorn's dissent, ¶61. But paragraph 1 does not do so——as stated previously, paragraph 1 uses "limit of liability" in the singular to describe the each person and each accident limit separately and in turn. Paragraph 1 simply sets out the rules we all agree on: (1) the each person "Limit of Liability" is the "maximum limit of liability . . . arising out of bodily injury sustained by any one person in any one accident," and (2) the each accident "Limit of Liability" is the "maximum limit of liability for all damages for bodily injury resulting from any one accident." Paragraph 1 reinforces that there are two limits of liability and does not answer the relevant question: which "limit of liability" is the reducing clause referring to?

13

¶28 Given the language of the reducing clause, it is unclear how a reasonable insured would understand that "the limit" is different depending on the facts of the case, much less figure out how the facts of a particular case would determine which limit would be reduced. As we have reasoned in previous UIM cases, "reducing clauses must be crystal clear in the context of the whole policy. Otherwise, insureds are not likely to understand what they are purchasing." Badger Mut. Ins. Co., 255 Wis. 2d 61, ¶46. There may, of course, be some variation in recovery depending on the facts of a particular case, but if the insurer intends for the coverage rules and definitions to vary, the insurer must make the rules governing that variation clear in its policy language so that the insured understands what coverage he or she is actually purchasing. See id.

¶29 Because the term "limit of liability" is undefined in the policy, it is given its plain and ordinary meaning. Hirschhorn v. Auto-Owners Ins. Co., 2012 WI 20, ¶28, 338 Wis. 2d 761, 809 N.W.2d 529. The reducing clause refers to "the limit" as opposed to "either limit" or "a limit," and it does not indicate in any way that the limit may vary. Therefore, the common, ordinary meaning of "the limit" is one single, particular limit.

¶30 Having decided that a reasonable insured would understand "the limit of liability" to refer to one particular limit of liability, rather than both limits or either limit, the next question is whether the phrase unambiguously refers to the

14

"each person" limit, the "each accident" limit, or whether the phrase is ambiguous. We conclude that a reasonable insured would understand "the limit of liability" to unambiguously refer to the "each person" limit.

¶31 Reading "the limit of liability" to mean the "each person" limit harmonizes the reducing clause and the underinsured motor vehicle definition. The policy defines an underinsured motor vehicle as one whose "limit for bodily injury liability is . . . less than the limit of liability for this coverage." Both the definition and the reducing clause refer to "the limit of liability," and both compare the insured's limit of liability with the limit of the responsible party——the definition compares each limit in order to determine whether there is coverage, and the reducing clause compares each limit in order to determine the amount of recovery. Neither section clearly refers to the each person limit, the each accident limit, or both. Importantly, Acuity concedes that the "limit" in the UIM definition refers to the "each person" limit of liability——otherwise, Curley would not be underinsured as his policy had equal "each accident" limits and lower "each person" limits than Acuity's policy.

¶32 An insured would reasonably expect "the limit" referred to in both sections to mean the same limit. If these sections referred to different limits, an insured would be understandably confused. It makes little sense that a vehicle could be "underinsured" when its policy limits are compared to Acuity's UIM policy limits in the definitions section, yet

15

treated as equally insured when those same limits are compared in the reducing clause.[8]  In the absence of more specificity, an insured would reasonably expect that when similar terms are similarly used to compare policy limits, those terms refer to the same limit.  Therefore, we read the reducing clause's "limit of liability" to mean the "each person" limit, consistent with the UIM definition and consistent with what a reasonable insured would expect.[9]

---

[8] Justice Hagedorn's dissent claims we put "too much stock" in harmonizing the underinsured motor vehicle definition with the reducing clause.  See Justice Hagedorn's dissent, ¶70.  However, it is well established that when the same or similar language is used in a contract or insurance policy, the language should be applied consistently.  See Day v. Allstate Indem. Co., 2011 WI 24, ¶57, 332 Wis. 2d 571, 798 N.W.2d 199 (explaining that the insurer's proposed definition of a term is "inconsistent with how the term is used in the context of another policy provision").  Although both sections as a whole may perform different functions, they both use the same phrase, "limit of liability," in answering the same question——how do the insured's limits of liability compare with those of the responsible party?  A reasonable insured would read these phrases consistently.

Similarly, Chief Justice Ziegler's dissent asserts that by interpreting the phrases consistently, we are creating a "requirement that a vehicle qualifying as 'underinsured' automatically means the insured receives payment."  See Chief Justice Ziegler's dissent, ¶50.  We implement no such requirement.  There will still be situations in which an underinsured vehicle may not automatically qualify the insured for payment——when the insured's recovery is reduced by payments received from other sources, for instance.

[9] This interpretation is also consistent with Filing v. Com. Union Midwest Ins. Co., 217 Wis. 2d 640, 579 N.W.2d 65 (Ct. App. 1998), in which the court of appeals interpreted a UIM policy's underinsured motor vehicle definition.  Like the court of appeals in Filing, which determined that the "limit for bodily injury liability" referenced in the definition was the

¶33 The dissenting opinions' reading of the reducing clause as referring to the maximum amount that Acuity will pay depending on the number of insureds and nature of the coverage is a logical way that an insurance policy could work.  However, the language of this particular policy does not connect the dots.  At best, the dissenting opinions provide us with an alternative reasonable interpretation of "limit of liability." When policy language is "susceptible to more than one reasonable interpretation," it is ambiguous.  Danbeck, 245 Wis. 2d 186, ¶10.  Ambiguity is resolved in favor of the insured, id., so the result is the same regardless.

2.  "All Sums Paid Because of the Bodily Injury"

¶34 We now turn to the second disputed phrase in the reducing clause and conclude that "all sums . . . [p]aid because of the bodily injury" means payments made because of the bodily injury suffered by the individual insured, rather than aggregate payments for all bodily injuries suffered by all insureds.  The clause states that the limit shall be reduced "by all sums" "[p]aid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."  At first glance, "by all sums" appears to be expansive, but it is immediately qualified by the phrase "because of the bodily injury."  The policy defines "bodily injury" as "bodily injury

tortfeasor's "per person limit," we read the policy "from the perspective of what the insured as an individual, not insureds as a whole, could recover from the tortfeasor's liability carrier," and similarly conclude that the reducing clause refers to the "each person" limit.  See Filing, 217 Wis. 2d at 649.

17

to or sickness, disease or death of <u>a person</u>" (emphasis added). This definition uses the singular——referring to one person——rather than the plural, which would encompass multiple injured people. Although (despite the singular phrasing) "bodily injury" does appear to be used elsewhere in the policy to refer to injuries suffered by multiple insureds,[10] the reducing clause further uses an additional singular term, "<u>the</u> bodily injury" (as opposed to, for example "bodily injuries" or "any bodily injury"). Based on the singular word choice in the reducing clause, we conclude that "all sums . . . [p]aid because of the <u>bodily injury</u>" means all sums paid because of the bodily injury to a singular insured.[11]

¶35 Like with the phrase "limit of liability," if we were to accept that an insured could also read "the bodily injury" broadly so that it referred to any injury sustained by all insureds, then the phrase would be ambiguous. We construe ambiguous language in favor of the insured, so the result here would be the same. <u>Danbeck</u>, 245 Wis. 2d 186, ¶10.

¶36 When reading the reducing clause as a whole, the most reasonable interpretation is that the "each person" limit shall

---

[10] Paragraph 1 of the Limits of Liability section defines the each accident limit as the "maximum limit of liability for all damages for <u>bodily injury</u> resulting from any one accident."

[11] We are not the first state high court to come to this conclusion. <u>See, e.g.</u>, <u>Buell v. Am. Universal Ins. Co.</u>, 224 Conn. 766, 771, 621 A.2d 262 (1993) (determining that "the" bodily injury in a reducing clause "refers only to the claimant's bodily injury and not to the bodily injury of others").

be reduced by payments made because of the bodily injury to the insured making the claim. This reading does not make the "each accident" limit superfluous. The "each accident" limit remains a cap on what Acuity itself will ever pay for bodily injury resulting from any one accident. Here, Acuity will pay no more than that $500,000 limit.

## III. CONCLUSION

¶37 We affirm the court of appeals because we agree that the policy's reducing clause operates on an individual basis to reduce the "each person" limit of liability by the payment each insured individually received from Curley's insurance.

*By the Court.*—The decision of the court of appeals is affirmed.

¶38 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* I dissent because the majority reads Acuity's policy as no reasonable insured would, creating coverage out of thin air that was never agreed upon. Acuity's UIM insurance policy is simple. Acuity agrees to pay up to a certain limit in the event its insured is injured in an accident with a driver whose vehicle is underinsured: up to $500,000 per person, but no more than $500,000 for any one accident. This is one among five limits, each listed in the "Limits of Liability" section of Acuity's policy. The per person and per accident limits work together as one collective limit to Acuity's liability. But this limit is reduced "by all sums" paid by or on behalf of the legally responsible party (the "tortfeasor") so the insured does not receive duplicate payments. Because the insureds in this case received from the tortfeasor a combined amount equal to Acuity's limit, the insureds received exactly the amount they would have gotten from Acuity if the tortfeasor had no insurance at all, and Acuity's liability is reduced to zero. Simple as that.

¶39 But the majority complicates this simple policy. Though Acuity's policy discusses the per person and per accident limits collectively as one singular "limit of liability," the majority reads them separately, ignoring the structure and organization of the "Limits of Liability" section. The majority then continues to overcomplicate Acuity's policy, imposing an atextual requirement that a vehicle qualifying as "underinsured" means the insured will receive payment under Acuity's policy in

1

every instance. This is not how Acuity's policy operates. I respectfully dissent.

I

¶40 "We interpret the provisions of an insurance policy using the same principles applicable to contracts generally." Kemper Independence Ins. Co. v. Islami, 2021 WI 53, ¶16, 397 Wis. 2d 394, 959 N.W.2d 912. "Where the language of a contract is unambiguous and the parties' intentions can be ascertained from the face of the contract, we give effect to the words they employed." Steadfast Ins. Co. v. Greenwich Ins. Co., 2019 WI 6, ¶21, 385 Wis. 2d 213, 922 N.W.2d 71. "Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law." Fontana Builders, Inc. v. Assurance Co. of Am., 2016 WI 52, ¶37, 369 Wis. 2d 495, 882 N.W.2d 398 (quoting Danbeck v. Am. Fam. Mut. Ins. Co., 2001 WI 91, ¶10, 245 Wis. 2d 186, 629 N.W.2d 150).

¶41 We must read policy language in context, not in isolation. "Sometimes it is necessary to look beyond a single clause or sentence to capture the essence of an insurance agreement." Folkman v. Quamme, 2003 WI 116, ¶21, 264 Wis. 2d 617, 665 N.W.2d 857. This may require examining a policy's organization and structure. Gohde v. MSI Ins. Co., 2004 WI App 69, ¶12, 272 Wis. 2d 313, 679 N.W.2d 835 ("We first look at the organization and structure of the policy."); Remiszewski v. Am. Fam. Ins. Co., 2004 WI App 175, ¶24, 276 Wis. 2d 167, 687 N.W.2d 809 ("We further conclude that neither

2

the structure and organization of American Family's policy, nor any provision therein, renders the reducing clause contextually ambiguous.").

¶42 The entire "Limits of Liability" section from Acuity's policy, including the reducing clause, is reproduced below:

Limits of Liability

1.  The Limit of Liability shown in the Declarations for each person for Underinsured Motorists coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorists coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

    This is the most we will pay regardless of the number of:

    a.  Insured persons;

    b.  Claims made;

    c.  Vehicles or premiums shown in the Declarations; or

    d.  Vehicles involved in the accident.

2.  The limit of liability shall be reduced by all sums:

    a.  Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part I – Liability; and

    b.  Paid or payable because of the bodily injury under any of the following or similar law:

        (1) Workers' compensation law; or

3

> (2) Disability benefits law.

3. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part I – Liability, Part II – Expenses for Medical Services or Part III – Uninsured Motorists coverage provided by this policy.

4. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

5. We will not make a duplicate payment to the extent amounts are paid or payable because of the bodily injury under any of the following or similar law:

   a. Workers' compensation law; or

   b. Disability benefits law.

Accounting for the structure and organization of the entire "Limits of Liability" section in Acuity's UIM policy, it becomes clear that the reducing clause reduces both the per person limit and the per accident limit.

¶43 The section is labeled "Limits of Liability" and contains five paragraphs. Each paragraph in some way limits Acuity's liability to the insured. The first paragraph does so with reference to the per person and per accident limits; the second paragraph being the reducing clause; and the last three limit liability for various forms of duplicate payments. Each one of these paragraphs thus operates as a limit to Acuity's liability, explaining why the section title uses the plural "Limits." Each paragraph counts as one individual "limit of liability." This also explains why the reducing clause states

4

"[t]he limit of liability," in the singular, "shall be reduced." It is because everything described in the first paragraph is one singular "limit of liability" for purposes of the "Limits of Liability" section.

¶44 Paragraph 1.'s own language confirms this reading. Immediately after the subparagraph describing both the per person limit and the per accident limit, there is a break followed by the statement, "This is the most we will pay . . . ." The break indicates that "the most [Acuity] will pay" is everything described in the preceding subparagraph: both the per person limit and per accident limit, which the policy describes collectively. Together, they form one singular "limit of liability" listed among other limits in the "Limits of Liability" section. Because the per person limit and per accident limit constitute one "limit of liability," the reducing clause requires that both of them be reduced "by all sums" "[p]aid because of the bodily injury."

II

¶45 Nowhere does the majority grapple with the "Limits of Liability" section's structure and organization. Its analysis never even acknowledges the fact that the "Limits of Liability" section contains three additional paragraphs after the reducing clause. This leads the majority to instead rely on a myopic reading of the policy that in no way reflects how a reasonable insured would understand it.

¶46 The majority distorts Acuity's policy to maximize the insureds' recovery beyond what was bargained for. After

5

incorrectly concluding that the reducing clause reduces either the per person or the person accident limit, but not both, the majority determines that "the limit" in "the limit of liability" must be the same both in the reducing clause and in the underinsured motor vehicle definition. Majority op., ¶31. The majority reasons, "It makes little sense that a vehicle could be 'underinsured' when its policy limits are compared to Acuity's UIM policy limits in the definitions section, yet treated as equally insured when those same limits are compared in the reducing clause." Id., ¶32.

¶47 The majority conflates status as "underinsured" with the need for payment.[1] Under Acuity's policy, a tortfeasor's vehicle is "underinsured" when the associated liability insurance policy's limit is "[l]ess than the limit of liability for this coverage." A vehicle being "underinsured" does not mean the UIM policyholder automatically must receive some payment from his insurer. All it means is that the tortfeasor's policy provides less coverage than the insured's policy. Whether the tortfeasor's policy will ultimately pay the same amount as an insured would receive under his own UIM policy is a different question entirely. After a limits-to-limits comparison, it may appear that there is some set of circumstances where a tortfeasor's policy limit will not provide the same amount of coverage as the insured's UIM policy. But, as is the case here, the insured may still receive from the

---

[1] Justice Hagedorn also identifies this error, a criticism on which I expand here. See Justice Hagedorn's dissent, ¶¶70-71.

tortfeasor the same amount he would have received under his own UIM policy even if the tortfeasor's policy limit is "[l]ess than the limit of liability for" the insured's UIM coverage. The majority rather, equates insurance with payment even where such payment is unnecessary.[2]

¶48 The correct result is straightforward. Acuity's liability is limited to $500,000 for any one insured, but no more $500,000 for any one accident. A singular, tragic accident caused "bodily injury" to two people insured under Acuity's policy. Each insured's damages from their injuries exceed $500,000. The injuries were caused by a tortfeasor whose insurer had a liability limit of $250,000 per person and $500,000 per accident. Thus, both of the insureds in this case received only $250,000 because total payments reached the tortfeasor's per accident limit. Under Acuity's policy, because the reducing clause treats the per person and per accident limits as one collective "limit of liability," they are both reduced. Both insureds received a combined total of $500,000 because of a single accident, so the per accident limit is reduced to zero, meaning there is no coverage remaining for this accident.

---

[2] The majority adds more confusion by attempting to ease this concern with the fact that payment may still be unnecessary "when the insured's recovery is reduced by payments received from other sources." Majority op., ¶32 n.8. Following the majority's logic, no payment is necessary when the insured receives a full recovery from the tortfeasor plus "other sources," but payment is somehow required when the insured receives the same amount from the tortfeasor alone. Again, no reasonable insured would understand Acuity's policy to operate this way.

7

¶49 The fact that the tortfeasor's per person limit caused his vehicle to qualify as "underinsured" under Acuity's policy does not change this result. The vehicle was underinsured because, due to Acuity's limits-to-limits comparison approach, it was <u>possible</u> that the insureds might not receive an amount equivalent to the amount they would have received under Acuity's UIM policy. If one insured suffered more than $250,000 in damages and the other suffered less, this would mean that the insured with more damages would recover less from the tortfeasor than he would from Acuity under its UIM policy. In this situation, the tortfeasor's vehicle would be underinsured, and payment by Acuity would be necessary. It is possible that the tortfeasor's liability insurance would not have paid the insureds the same amount the insureds would receive under Acuity's policy, but that is not the case here, so payment by Acuity is not necessary. There is no need to read in confusion to reach this sensible result.

III

¶50 Acuity's policy is simple and straightforward. The per accident and per person limits operate together as one collective "limit of liability" to establish the most Acuity might pay. Because the reducing clause reduces "the limit of liability" "by all sums" paid to the insureds by the tortfeasor, each component part of that collective limit likewise reduces. In this case, the insureds received from the tortfeasor the exact amount they would have under Acuity's policy, meaning Acuity has no remaining liability. But the majority eschews

8

this simple reading in favor of a complex one that no reasonable insured would understand. It also unwittingly creates a requirement that a vehicle qualifying as "underinsured" automatically means the insured receives payment. This is simply not how Acuity's policy operates.

¶51 For the foregoing reasons, I respectfully dissent.

¶52 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.

¶53 BRIAN HAGEDORN, J. *(dissenting).* Before his unfortunate passing, Michael Shimeta purchased underinsured motorist (UIM) coverage from Acuity. In that policy, Acuity agreed to pay claims up to a maximum limit of liability: $500,000 per person, but no more than $500,000 total per accident. The operative language and design of these policies is standard. And basic logic tells us that the per accident limit will reduce the amount individuals can recover in multi-person accidents. In practice, this means that the recovery for any individual under Shimeta's policy with Acuity may not be the full $500,000 if multiple insureds are injured. Everyone agrees that this is how the policy works.

¶54 The UIM policy also has a standard reducing clause. The whole concept of this kind of UIM coverage combined with a reducing clause is for an insured to obtain "a predetermined, fixed level of UIM recovery that is arrived at by combining payments" "from all legally responsible sources." Welin v. Am. Fam. Mut. Ins. Co., 2006 WI 81, ¶49-50, 292 Wis. 2d 73, 717 N.W.2d 690 (quoting another source). In other words, the insured has agreed to be paid a specific amount——first from other legally responsible parties, with any remaining amounts due coming from Acuity. So the reducing clause functions consistent with the rest of the policy.

¶55 But the majority somehow finds that payments from the tortfeasor's insurer should count as a reduction against only the per person limit. In so doing, the majority creates complexity where none is found, leading it to misread the

1

policy. In the end, the insureds here do not receive a fixed level of UIM recovery arrived at by combining payments from all legally responsible sources. Instead, they receive double what Shimeta's policy promises as a total payout for any one accident. This may be good for Shimeta's estate and his injured passenger, but it is not what the policy provides. I respectfully dissent.[1]

## I. THE POLICY

¶56 We begin with the policy language.[2] The declarations page of the policy summarizes the coverage Shimeta purchased. Multiple coverages are listed in the standard way, as providing a certain payout for "Each Person" and a second amount for "Each Occurrence" or "Each Accident." For example, Shimeta purchased uninsured motorist coverage for bodily injury in the amount of $500,000 per person and $500,000 per accident. And as relevant here, the UIM coverage is "$500,000 Each Person" and "$500,000 Each Accident."

---

[1] I understand Chief Justice Ziegler's dissent to make largely the same arguments I present here, and therefore I substantially agree with it.

[2] Because insurance policies are contracts, our primary goal in interpreting them is "to give effect to the intentions of the parties." Wadzinski v. Auto-Owners Ins. Co., 2012 WI 75, ¶11, 342 Wis. 2d 311, 818 N.W.2d 819. "The parties' intentions are presumed to be expressed in the language of the policy." Id. We therefore begin the inquiry with the policy's language. See, e.g., Secura Ins. v. Lyme St. Croix Forest Co., LLC, 2018 WI 103, ¶17, 384 Wis. 2d 282, 918 N.W.2d 885. "Generally, we interpret a policy's terms as they would be understood from the perspective of a reasonable person in the position of the insured." Id.

2

¶57 The relevant policy language in the UIM endorsement comes under the bolded[3] heading "Limits of Liability" and provides in relevant part:

1. The Limit of Liability shown in the Declarations for each person for Underinsured Motorists coverage is our maximum limit of liability for all damages, including damages for care, loss of service or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the Limit of Liability shown in the Declarations for each accident for Underinsured Motorists coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

  a. Insured persons;

  b. Claims made;

  c. Vehicles or premiums shown in the Declarations; or

  d. Vehicles involved in the accident.

2. The limit of liability shall be reduced by all sums:

  a. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part I – Liability; and

  b. Paid or payable because of the bodily injury under any of the following or similar law:

    (1) Workers' compensation law; or

    (2) Disability benefits law.

---

[3] Following our style guide, bolded terms in the policy are underlined in this dissent.

3

¶58 Several observations are in order. This entire section uses the phrase "limit of liability" throughout. Paragraph 1 uses that phrase four times, and refers back to the amount itemized in the declarations. The policy explains that the most an insurer will pay, called the "maximum limit of liability," will turn on the policy coverages purchased and the number of insureds entitled to payment for a single accident. One limit is governed by the "each person" coverage amount purchased. And the "each accident" limit is the maximum limit Acuity will pay for bodily injury "resulting from any one accident." This means that when two or more persons are injured in one accident, the "each accident" limit could, depending on the policy purchased, operate as a cap that limits the recovery for any one insured. And if that wasn't plain enough——because that pattern is how this whole policy operates——the paragraph doubles down and declares that no matter how many insured persons are injured, claims are made, or vehicles are involved or covered, the per accident limit is "the most we will pay regardless."

¶59 This UIM coverage, then, works together as a seamless, integrated, perfectly understandable whole. If this were a $100,000 per person, $300,000 per accident policy, for example, the per person limit might be the more commonly applicable limit, and the per accident limit reached less often. But this is a $500,000 per person and $500,000 per accident policy. So here, the per accident limit may come into play more often than a policy with a different mix of coverages. While the coverage

4

purchased and nature of an accident will dictate how the math works, the policy will always have a definitive maximum limit of liability——a dollar figure that serves as a cap on Acuity's liability. This limit need not be one or the other. For example, in this $500,000 per person and per accident policy, where one insured is injured in the same accident, the "limit of liability" is $500,000. There's no need to choose between the two limits. The point is, there will always be a fixed dollar amount that is the most Acuity will pay, however it is calculated.

¶60 This can be seen in a straightforward way in the same page of the policy as the "Limits of Liability" section. The UIM policy provides that other applicable insurance coverage could likewise reduce the amount owed. Under paragraph 3 of the "Other Insurance" section, the policy says its obligation to pay primary or excess coverage will extend to "our limit of liability" under the policy. In other words, the policy understands there will always be a fixed dollar "limit"——phrased in the singular——that will be owed to the insured. Whether that limit will be established by the per person limit or the per accident limit will again depend on the coverages purchased and the number of insureds that are injured in any one accident.

¶61 Turning to the reducing clause in paragraph 2 of the "Limits of Liability" section, it too employs the same language as paragraph 1. It refers to the "limit of liability." And we already know what that phrase means: it is the most Acuity will pay, whether determined by the per person or per accident limit

5

(or both if identical), depending on the chosen coverages and number of injured persons. And the reducing clause says that this limit "shall be reduced by all sums" paid by someone or some entity "who may be legally responsible"——like the tortfeasor who caused the accident in this case.[4]

¶62 Applying the policy is straightforward. The reducing clause operates to reduce Acuity's liability under its policy, whatever that limit might be. In this case, the tortfeasor's insurer paid $500,000 in combined payments to Shimeta's estate and the passenger in his car; both are insureds under the policy seeking coverage for bodily injury resulting from one accident. And since Acuity agreed to pay no more than $500,000 for any one accident under the terms of this particular policy, Acuity's "limit of liability" is reduced per the reducing clause to zero.

¶63 A reasonable insured would not be confused by any of this. It is exactly how this UIM policy is designed to work. Shimeta bargained and paid for this precise level of coverage. Once again, the whole point of this type of "limits-to-limits" UIM policy is to "put the insured in the same position he or she would have occupied had the tortfeasor's liability limits been the same as the UIM limits purchased by the insured."[5] Welin,

_____

[4] The policy further says that it shall be reduced by anything paid or payable under workers compensation law, disability benefits law, or any similar law.

[5] If the tortfeasor in this case had the liability limits Shimeta purchased——$500,000 per person and $500,000 per accident——then Shimeta and his passenger would have received the same thing they were given here: $500,000 total. That's why Shimeta's estate already received exactly what he originally bargained for.

6

292 Wis. 2d 73, ¶26.  The policy self-consciously offers "a predetermined, fixed level of UIM recovery that is arrived at by combining payments from all sources."  Id., ¶49. The reducing clause ensures that the insureds receive only the fixed sum they bargained for.  Nothing more, nothing less.  It does this by promising to pay up to the limit of liability, minus payments from other responsible parties or under other relevant laws providing compensation.[6]

## II.  THE MAJORITY'S MISTAKES

¶64 The majority, however, misses all of this and designs a more generous insurance policy than the one Shimeta bargained for.  The majority begins its analysis of the reducing clause by rightly focusing on the phrase "limit of liability."  Majority op., ¶23.  But instead of interpreting that phrase consistent with the rest of the policy, the majority proclaims itself stumped.  So it hypothesizes four possibilities for what it could mean.  The majority reasons "Limit of liability" could refer to:  "(1) both the 'each person' and the 'each accident' limit; (2) either the 'each person' or the 'each accident' limit depending on the facts of the case; (3) only the 'each person' limit; or (4) only the 'each accident' limit."  Id., ¶24.

---

[6] In fact, the policy provides that Acuity "will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons . . . who may be legally responsible."  The majority's conclusion results in exactly the type of duplicate payment the policy prohibits.

¶65 The majority first rejects the idea that both limits are referred to because the reducing clause uses the singular "limit of liability." Id., ¶¶25-26. Moving on to option two, the majority explains that it can't be right either because "neither paragraph 1 nor the reducing clause actually say that the limit of liability to be reduced changes depending on the number of injured insureds." Id., ¶27. Except that it does. Paragraph 1 immediately preceding the reducing clause uses "limit of liability" in the singular for both, and explicitly says that the "maximum limit of liability for all damages . . . resulting from any one accident" supersedes the per person limit. The per accident limit is the maximum Acuity "will pay regardless of the number of . . . Insured persons" who are injured and entitled to recovery.

¶66 The majority then postulates a reasonable insured is simply not going to understand which limit applies. Majority op., ¶28. I suppose it's true that few insureds truly grasp how their policies work. Insurance policies tend not to be evening reading material for most people. But this isn't rocket science, and a reasonable insured wouldn't be confused. Shimeta bargained for a maximum recovery defined as $500,000 per person, and at most, $500,000 per accident regardless of the number of injured persons. The entire policy issued to Shimeta, including standard liability insurance, uninsured motorist coverage, and the UIM endorsement contain the same structure. Under the majority's logic, reasonable people just can't understand what it means for a policy to have a maximum dollar limit (the "limit

8

of liability") that can vary depending on coverages purchased and the facts of a case.

¶67 The majority compounds its errors by positing that since the "limit of liability" in the reducing clause is singular, it can only refer to "one particular limit of liability, rather than both limits or either limit." Id., ¶30. It then concludes we must choose the "each person" limit because that harmonizes the definition with the definition of underinsured motor vehicles. Id., ¶31. Since caselaw, rather than a definition in the policy, establishes that a vehicle is underinsured, the majority concludes we must read it the same way. Id., ¶32. Finally, the majority misconstrues the policy further by saying that because the reducing clause uses the phrase "the bodily injury" in the singular, it should be understood as reducing payments only for a singular insured's per person coverage. Any other proposed reading of "limit of liability" or "the bodily injury" would be ambiguous, the majority reasons, and therefore read in favor of the insured. Id., ¶¶33, 35. None of this correct.

¶68 First, neither basic grammar nor logic dictate that because "limit of liability" is used in the singular, only one of the two possible limits must be referred to. Rather, the policy is consistent that there will always be a maximum dollar limit to Acuity's liability depending on the coverages purchased for per person and per accident, and depending on the facts of the case.

9

¶69 Second, the majority's emphasis on "the <u>bodily injury</u>" is likewise atextual. The policy always uses "bodily injury" in the singular and bolded. This is because "bodily injury" is a defined term in the policy referring to a type of damage that triggers liability and coverage. The policy does the same thing with "property damage"——another type of damage that may be covered in the policy and is separately defined. Both here and throughout the rest of the policy, even where two or more insured persons are injured, the phrase "bodily injury" is always bolded and used in the singular. The majority's emphasis on the definite article "the" does not transform this standard definition-invoking language into a clue that the reducing clause is meant to operate in a way totally divorced from the entire operation of this fixed coverage UIM policy.

¶70 Finally, the majority puts too much stock in the fact that whether underinsurance is triggered looks only to the per person limit. Acuity agrees based on a court of appeals decision that the tortfeasor's limit should be compared with the policy's per person limit for purposes of answering the initial question of whether the policy is triggered. <u>See</u> <u>Filing v. Com. Union Midwest Ins. Co.</u>, 217 Wis. 2d 640, 649-50, 579 N.W.2d 65 (Ct. App. 1998) (holding that the tortfeasor's liability limits should be compared with the per person limits under the policy). But that means little here. The reasoning of the court of appeals in <u>Filing</u> rested less on a careful interpretation of the language than on its sense that the insured expected potential coverage apart from how many are injured in an accident. <u>Id.</u>

10

It also discussed the many "absurd results" that would be occasioned by interpreting the policy the other way. Id. at 647 & n.3. While I am not suggesting the outcome was incorrect, Filing has little to say analytically about the question presented here.

¶71 Whether Acuity must pay and in what amount is a different question altogether from whether UIM coverage is triggered in the first instance. To determine if any portion of the coverage is reduced, we must look to the relevant policy language. And as we've explained, paragraph 1——directly before the reducing clause in paragraph 2——specifically references both limits. "[A] reasonable insured would understand that the reducing clause in [paragraph 2] of the Limit of Liability section of the UIM endorsement qualifies the insurer's obligation to pay the maximum limit of liability as described in . . . [paragraph 1]." Ruenger v. Soodsma, 2005 WI App 79, ¶23, 281 Wis. 2d 228, 695 N.W.2d 840. Thus, whether UIM coverage is triggered in the first instance isn't doing the analytical work the majority thinks it is.

## III. CONCLUSION

¶72 While insurers can draft policies moving forward that satisfy the majority's perplexity, the language the majority misinterprets today will impact current policies across the state. The majority misses the mark by trying to figure out which limit the phrase "limit of liability" in the reducing clause applies to. The answer is apparent: The policy

11

consistently describes itself as having one maximum dollar limit, a "limit of liability," which could be triggered by either of the two limits depending on the coverages purchased and the facts of the case. And the reducing clause provides that Acuity's liability limit must be reduced when other responsible parties provide compensation.

¶73 Here, Shimeta purchased UIM coverage in the amount of $500,000 per person and $500,000 per accident. An unfortunate accident occurred, leaving Shimeta dead and his passenger injured, both insureds under the policy. Collectively, Shimeta's estate and his injured passenger received $500,000 from the tortfeasor's insurance. The reducing clause requires that this $500,000 be deducted from Acuity's limit of liability, which under these facts and this coverage is $500,000 for this one accident. Therefore, the predetermined, fixed sum Shimeta bargained for was paid out, and Acuity has no further liability under the policy. I respectfully dissent.

¶74 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.