COURT OF APPEALS
DECISION
DATED AND FILED

April 8, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP78**

Cir. Ct. No. 2021CV554

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

THE ESTATE OF FINLEY BAIER, TAYLOR BAIER AND FAITH MOENING,

    PLAINTIFFS-RESPONDENTS,

J.J. KELLER AND ASSOCIATES, INC. HEALTH AND WELFARE PLAN,

    INVOLUNTARY-PLAINTIFF-RESPONDENT,

  V.

JACOB HEMAUER, AMERICAN FAMILY INSURANCE COMPANY AND ABC INSURANCE,

    DEFENDANTS,

GRAVITY PARK USA, LLC, DEF INSURANCE AND GHI INSURANCE,

    THIRD-PARTY DEFENDANTS-RESPONDENTS,

NATIONAL CASUALTY COMPANY,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. National Casualty Company appeals from a nonfinal order denying its motion for summary judgment.[1]  National Casualty moved for summary judgment on the ground that the policy of insurance it issued to Robert Schneider DBA Gravity Park USA, LLC,[2] did not provide coverage, pursuant to several endorsements, for the claims alleged in this case against Gravity Park.  For the reasons that follow, we agree with National Casualty's reading of the plain language of the policy.  Accordingly, we reverse and remand this case with directions that the circuit court grant National Casualty's motion for summary judgment.

## BACKGROUND

¶2   The following facts are undisputed for the purposes of this appeal. On July 19, 2020, five-year-old Finley Baier suffered a fatal injury while riding a

---

[1] We granted leave to appeal the nonfinal order on February 9, 2024.  *See* WIS. STAT. RULE 809.50(3) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] Schneider is Gravity Park's owner.  Going forward, unless otherwise noted, we will refer to both Schneider and Gravity Park as "Gravity Park."  National Casualty issued a commercial general liability policy to Gravity Park for the policy period from May 20, 2020, to March 29, 2021 (hereinafter, the policy).

dirt bike[3] on a track owned and operated by Gravity Park. Finley's death occurred when he was struck by Jacob Hemauer, who was driving an ATV on that same track. The record is clear that there was no official scheduled activity or race taking place at Gravity Park that day. The facility was open for fee-paying guests to ride freely on the track.

¶3 As a result of the accident, Finley's parents—Taylor Baier and Faith Moening—and Finley's Estate (collectively, Finley's parents) filed the instant lawsuit against Hemauer and Hemauer's insurer, American Family Mutual Insurance Company (collectively, Hemauer).[4] Thereafter, Hemauer filed a third-party complaint against Gravity Park, Schneider, and Gravity Park's unknown insurer, alleging that Gravity Park's negligence contributed to Finley's death. National Casualty then intervened in the lawsuit, seeking a declaratory judgment that it had no duty to defend or indemnify Gravity Park. Finley's parents responded with an amended complaint that included claims against Gravity Park, alleging negligence and gross negligence against Hemauer and Gravity Park and alleging a violation of the Safe Place Statute—WIS. STAT. § 101.11—against Gravity Park.

¶4 National Casualty subsequently moved to bifurcate and stay proceedings on liability pending a determination of its coverage obligations, which the circuit court granted. Thereafter, National Casualty filed a motion for

---

[3] A dirt bike is a "lightweight motorcycle designed for operation on unpaved surfaces." *Dirt bike*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/dirt%20bike (last visited April 3, 2025).

[4] United Healthcare Insurance Company was originally named as an involuntary plaintiff based on its status as Finley's health insurer. The J.J. Keller & Associates, Inc. Health & Welfare Plan was substituted for United Healthcare as the correct party of interest on October 18, 2022.

summary judgment, asserting that the policy did not provide coverage for any of the parties' claims against Gravity Park and that National Casualty had no duty to defend or indemnify Gravity Park with regard to the lawsuit's claims. Specifically, National Casualty argued that its Commercial General Liability Coverage Form (the CGL Coverage Form) was narrowed by the policy's Limited Event Coverage Endorsement "to reported events on file with National Casualty." Therefore, damages arising as a result of Finley's death, which did not occur during a scheduled, reported, and approved event, were not covered under the policy. National Casualty also identified three other endorsements that it claimed barred coverage: (1) the Motorsports Racing Liability Coverage Endorsement (the Motorsports Endorsement); (2) the Designated Operations Exclusion Endorsement; and (3) the Legal Liability to Participants Who Are Minors Endorsement (Minors Endorsement).

¶5 The circuit court denied National Casualty's summary judgment motion by written decision and order. The court first noted that the parties agreed that Finley's accident was an "occurrence" such that there was an initial grant of coverage under the CGL Coverage Form. The court also appeared to conclude that the Limited Event Coverage Endorsement precluded coverage for the claims against Gravity Park because the evidence "clearly establishes that Gravity Park had not declared an event for July 19, 2020."

¶6 Nevertheless, the circuit court then proceeded to address the Motorsports Endorsement. The endorsement modified the CGL Coverage Form to add an exclusion for "'[b]odily injury' or 'property damage' arising out of the use of the 'premises' for any exhibition, event or activity not a part of the 'covered program.'" As relevant here, "covered program" was defined as any event that "[i]s usual and customary to your business activities and events." The court

4

determined that Finley and Hemauer were participating in a noncompetition motocross riding event, which was "usual and customary" for Gravity Park, and, as such, the court concluded that the Motorsports Endorsement provided coverage, notwithstanding the Limited Event Coverage Endorsement.

¶7      The circuit court further determined that the Designated Operations Exclusion Endorsement precluded coverage under the policy when read in isolation, but it did not preclude coverage when read in conjunction with the rest of the policy. The endorsement states that the policy does not provide coverage for bodily injury or property damage arising out of "'[o]pen riding and practice activities' on the insured premises during nonracing days." The exclusion defines "[o]pen riding and practice activities" as "times in which 'covered programs' are not occurring and participation is open to the general public either on a club membership basis or on a fee basis." Because the court had already concluded that Finley's accident occurred during a "covered program," the court concluded that the Designated Operations Exclusion Endorsement did not apply because it only applied when covered programs were not occurring.

¶8      Finally, the circuit court declined to apply the Minors Endorsement, citing disputed issues of material fact as to whether Finley was a "participant" as defined by the policy. That exclusion states:

> This insurance does not apply to "bodily injury" to any "participant" during a "covered program" who is under the age of sixteen (16) years old at the time of the "occurrence."
>
> This exclusion does not apply:
>
> 1. To a "participant" who is not a driver or rider;
>
> 2. If the "participant" driver possesses a valid driver's license; or

3. The "participant" is injured during a "covered program" listed in the schedule below.[5]

¶9    According to the circuit court, the first two exceptions to the Minors Endorsement did not apply.  It noted, however, that, as relevant to the third exception, the Motorsports Endorsement defines a "participant" as "any person granted permission to enter the 'restricted area'"—meaning "any area requiring special authorization, credentials or permission to enter and to which admission by the general public is restricted or prohibited," which Schneider testified at his deposition was the racetrack—"but only if: a. The person has clearly defined duties directly allotted to them as respects a 'covered program'; and b. The person is within the 'restricted area.'"  (Formatting altered.)  While it was undisputed that Finley's accident occurred within the restricted area, the court concluded that there was a genuine issue of material fact as to whether Finley had "clearly defined duties directly allotted to" him.  Accordingly, the court determined that it could not conclude, as a matter of law, that the Minors Endorsement barred coverage. National Casualty appeals.

## DISCUSSION

¶10    On appeal, National Casualty argues that the circuit court erred by failing to give proper effect to the Limited Event Coverage Endorsement. Specifically, while National Casualty concedes that Finley's injuries constitute "bodily injury" caused by an "occurrence" during the policy period—such that the policy provides an initial grant of coverage—it argues that the Limited Event Coverage Endorsement narrows the general liability coverage provided under the

---

[5] The schedule listed the event as "MOTORCYCLES & ATVS," the date "AS REPORTED," the location as "PER TRACK LOCATION," and the minimum age as "4."

entire policy, with the result being that coverage is provided only for scheduled events reported by Gravity Park to National Casualty.

¶11    In response, Gravity Park argues that "the Motorsports Endorsement adds definitions to the [CGL Coverage] Form, including what constitutes a 'covered program.'"  Because the circuit court found that Finley was participating in a covered program at the time of his death, Gravity Park contends that there is coverage under the policy.  Finley's parents agree, arguing that the policy's exclusions are inapplicable to the facts of this case.  According to Finley's parents, the Limited Event Coverage Endorsement is inapplicable to this case "because it only applies to specifically scheduled races and Finley was not participating in any such race."  Thus, both Gravity Park and Finley's parents assert that National Casualty's duty to defend has been triggered.

¶12    "Contracts for insurance typically impose two main duties—the duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages."  *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579.  The duty to defend is broader than the duty to indemnify.  *Id.*, ¶29.  To determine an insurer's duty to defend its insured, we generally compare the four corners of the underlying complaint to the terms of the entire insurance policy.  *Water Well Sols. Serv. Grp. Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285.  However, where an insurer tenders a defense and seeks a determination of its coverage obligation, a circuit court may look beyond the complaint and consider relevant extrinsic evidence to make that determination.  *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶13, 408 Wis. 2d 39, 992 N.W.2d 31.  If the record forecloses any possibility of coverage, then all obligations under the policy—including the duty to defend—are discharged.  *Pamperin Rentals II, LLC*

7

*v. R.G. Hendricks & Sons Constr., Inc.*, 2012 WI App 125, ¶5, 344 Wis. 2d 669, 825 N.W.2d 297.

¶13    This case is before us on National Casualty's motion for summary judgment. "Insurers may seek determinations of their coverage obligations through summary judgment or declaratory judgment." *Wiegert v. TM Carpentry, LLC*, 2022 WI App 28, ¶19, 403 Wis. 2d 519, 978 N.W.2d 207. "Summary judgment is appropriate when there is no genuine issue of material fact and 'the moving party is entitled to judgment as a matter of law.'" *Quick Charge Kiosk LLC v. Kaul*, 2020 WI 54, ¶9, 392 Wis. 2d 35, 944 N.W.2d 598 (quoting WIS. STAT. § 802.08(2)). Our review of a motion for summary judgment is de novo, applying the same methodology as the circuit court but benefitting from the circuit court's analysis. *Id.*

¶14    This case also requires us to interpret the terms of an insurance contract, which is a question of law that we review independently. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. "Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties." *Id.* "Insurance policies are construed as they would be understood by a reasonable person in the position of the insured." *Id.* "However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Id.* "When analyzing whether an insurance policy provides coverage, we examine the terms of the policy and compare it to the facts in the record." *5 Walworth*, 408 Wis. 2d 39, ¶16.

¶15    Our interpretation begins with a three-step process:

> First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim…. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage.

*American Girl*, 268 Wis. 2d 16, ¶24. "Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain." *Id.* Importantly, "[w]e analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it." *Id.* Furthermore, "[a]n exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies." *Id.*

¶16 Based on our review of the terms of the policy and the record, we conclude that although the CGL Coverage Form provides an initial grant of coverage for the claims alleged in Finley's parents' amended complaint and Hemauer's third-party complaint, the Limited Event Coverage Endorsement restricts coverage to occurrences taking place during a scheduled, reported, and approved event. Given that such an activity or race was not taking place at Gravity Park on the day of Finley's accident, the policy does not provide

coverage; therefore, National Casualty has no duty to defend Gravity Park against the claims in this case.[6]

¶17　We begin, as we must, with the language of the policy. As noted above, the CGL Coverage Form provides an initial grant of coverage for "sums that the insured becomes legally obligated to pay" as a result of "bodily injury" or "property damage" caused by an "occurrence." However, the Limited Event Coverage Endorsement, by its plain language, clearly states that it "modifies insurance provided under" the CGL Coverage Form. That endorsement then states: "*This insurance* applies only to 'bodily injury,' 'property damage' or 'personal and advertising injury' arising out of an 'occurrence' or offense which takes place during an event shown in the [s]chedule below." (Emphasis added.) That "[s]chedule" includes only "EVENTS REPORTED TO AND APPROVED, PRIOR TO THE EVENT, BY [National Casualty], AS PER SCHEDULE ON FILE."

¶18　The Limited Event Coverage Endorsement's language is unequivocal that National Casualty's insurance contract with Gravity Park— "[t]his insurance"—provides coverage only for occurrences or offenses taking place during a scheduled event reported to and approved, prior to the event, by National Casualty. Thus, given that it is undisputed that Finley's accident did not take place during an event that had been reported to and approved by National

---

[6] The parties also present arguments regarding the applicability of the Designated Operations Exclusion Endorsement, the Motorsports Endorsement, and the Minors Endorsement. Given our conclusion that the Limited Event Coverage Endorsement precludes coverage under the policy for the claims in this case, we do not address the remaining endorsements. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not discuss other issues).

Casualty, the Limited Event Coverage Endorsement bars coverage for the claims arising out of Finley's accident.

¶19 The circuit court seemingly agreed with this plain language interpretation of the policy. The court acknowledged that "the parties agree that the accident which caused Finley's death was an 'occurrence'" and that "Gravity Park also concedes that there is no coverage for these claims under the Limited Event Coverage [E]ndorsement … because the evidence clearly establishes that Gravity Park had not declared an event for July 19, 2020." The court's analysis should have ended there.

¶20 Nevertheless, the circuit court stated, "Therefore, the analysis will move to the [M]otorsports [E]ndorsement and the exclusions for designated operations and injuries to minor 'participants.'" The court did not explain, however, why it determined that the Limited Event Coverage Endorsement provided no coverage to Gravity Park but then continued to consider the Motorsports Endorsement, the Designated Operations Exclusion Endorsement, and the Minors Endorsement. We agree with National Casualty that "[o]nce the circuit court determined that no coverage exists for Gravity Park under the Limited Event Coverage [E]ndorsement[,] … the circuit court should have granted summary judgment for National Casualty and terminated the coverage portion of the case as it relates to National Casualty's policy." Thus, the circuit court erred.

¶21 On appeal, Finley's parents contend that the Limited Event Coverage Endorsement "is inapplicable because it only applies to specifically scheduled races and Finley was not participating in any such race." Finley's parents' argument suffers from a fundamental misreading of the plain terms of the insurance contract. Contrary to their assertion, it is not that the *endorsement* is

applicable or inapplicable based on whether there is or is not a scheduled race. The endorsement always applies to modify insurance provided under the CGL Coverage Form. *See* **Romero v. West Bend Mut. Ins. Co.**, 2016 WI App 59, ¶19, 371 Wis. 2d 478, 885 N.W.2d 591 ("An endorsement may add to, modify, or supplant the original policy…. [I]f the endorsement expressly states that its provisions should be substituted for those in the main body, the endorsement prevails. Likewise, if the provisions of the endorsement are inconsistent with the main body, the endorsement controls." (citations omitted)).

¶22 As addressed above, the plain language of the Limited Event Coverage Endorsement provides: "*This insurance* applies only to [injury or damage] arising out of an 'occurrence' or offense which takes place during an event" "reported to and approved, prior to the event, by [National Casualty]." (Formatting altered; emphasis added.) The policy does *not* say "this endorsement applies" or that "the endorsement only applies in the event of a scheduled race." Therefore, it is the *insurance*—i.e., the insurance coverage—that is applicable or inapplicable based on whether there is or is not a scheduled race. Here, Finley's fatal injury did not arise out of an occurrence during a scheduled, reported, and approved event; therefore, "[t]his insurance" does not apply.

¶23 Gravity Park and Finley's parents also argue that the circuit court properly determined that National Casualty's policy provides coverage in this case by virtue of the Motorsports Endorsement. According to these parties, Finley and Hemauer were participating in a "covered program" at the time of Finley's death, and, as a result, there is coverage under the policy pursuant to the Motorsports Endorsement. In response to the arguments regarding the Limited Event Coverage Endorsement, Gravity Park contends that the "Limited Event Coverage

Endorsement does not and cannot supplant the" Motorsports Endorsement "or the rest of the policy." (Formatting altered.)

¶24 As noted above, *see supra* ¶6, the Motorsports Endorsement provides that "[t]his insurance does not apply to" ""[b]odily injury' or 'property damage' arising out of the use of the 'premises' for any exhibition, event or activity not a part of the 'covered program.'" The endorsement then "add[s]" to the CGL Coverage Form the definition of a "covered program," which means "any event" that "[w]as specifically submitted to us as a scheduled event or activity at the inception of this policy"; "[i]s usual and customary to your business activities and events"; or "[h]as been specifically endorsed to this policy."[7]

¶25 According to Gravity Park and the circuit court, the event that Finley and Hemauer were participating in was a noncompetition motocross open riding event. Schneider testified that Gravity Park hosted noncompetition motocross events "[p]robably twice a week" during the 2020 season. Thus, while Schneider agreed that he had not reported any noncompetition motocross events to National Casualty, Gravity Park argues, and the court found, that these types of events were "usual and customary" to the business activities at Gravity Park. Accordingly, Gravity Park contends that these noncompetition motocross events were covered by the policy pursuant to the definition of "covered program" under the Motorsports Endorsement.

¶26 The problem with Gravity Park's argument and the circuit court's decision is that, as addressed above, the Limited Event Coverage Endorsement

---

[7] The Motorsports Endorsement also includes "registration and technical inspection on or off the 'premises'" in the definition of "[c]overed program."

explicitly states that it "modifies insurance provided under" the initial grant of coverage in the CGL Coverage Form in its entirety—as demonstrated by its broad reference to "[t]his insurance"—to exclude coverage for all occurrences except those that take place during a scheduled, reported, and approved event. Essentially, the court concluded that because an exclusion in the Motorsports Endorsement did not apply, "the [M]otorsports [E]ndorsement provides coverage." As we noted above, however, "[t]he inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it." *See American Girl*, 268 Wis. 2d 16, ¶24; *see also Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶15, 342 Wis. 2d 311, 818 N.W.2d 819 ("[A]n exception to an exclusion cannot create coverage where the policy's initial grant of coverage does not provide that type of coverage.").[8]

¶27    Here, the circuit court found ambiguity in the policy by ignoring the effect of the Limited Event Coverage Endorsement on the CGL Coverage Form, and it rewrote the policy by reinstating coverage that was precluded under that endorsement by expansively applying the "covered program" definition under the Motorsports Endorsement to include open riding. A court's role is not to rewrite clear language in an insurance policy "to bind an insurer to a risk which it did not contemplate and for which it was not paid." *See Paape v. Northern Assurance Co.*, 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987).

---

[8] In its response brief, Gravity Park challenges National Casualty's reference to *Wadzinski v. Auto-Owners Insurance Co.*, 2012 WI 75, 342 Wis. 2d 311, 818 N.W.2d 819, stating that the "case simply does not apply" because "[t]he parties here agree that the event at which [Finley] was killed was an 'occurrence' under National Casualty's [CGL Coverage] Form, therefore, there is already an initial grant of coverage under the policy." We disagree. As we have done here, National Casualty cites *Wadzinski* for a general proposition of insurance contract law, which is entirely unrelated to, and not based on, the specific facts of the case.

¶28 Reading National Casualty's policy as a whole, it is clear that the policy was not intended to provide coverage for open riding—as excluded by the Designated Operations endorsement, *see supra* ¶7—or events that were not submitted as a part of Gravity Park's schedule of events—as excluded by the Limited Event Coverage endorsement. *See Connors v. Zurich Am. Ins. Co.*, 2015 WI App 89, 365 Wis. 2d 528, 872 N.W.2d 109 ("Courts are to 'interpret policy terms not in isolation, but rather in the context of the policy as a whole.'" (citation omitted)). Moreover, the circuit court's expansive reading of the Motorsports Endorsement—finding that it provides coverage for noncompetition motocross open riding events—would, for all intents and purposes, render the Limited Event Coverage Endorsement, which eliminates coverage entirely for unreported events, superfluous. *See Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶10, 257 Wis. 2d 401, 651 N.W.2d 318 (explaining that an insurance policy must be read as a whole so that none of its language is superfluous or meaningless).

¶29 In contrast, Gravity Park contends that "the Limited Event Coverage Endorsement only purports to modify portions of the original general liability form and not the other endorsements" and that "if the Limited Event Coverage [E]ndorsement were read to supplant the entire policy, there would be ambiguity when read in [the] context of other provisions of the policy." In support of its position, Gravity Park cites *Great American Assurance Co. v. AES Promotions, LLC*, No. 2010AP100041, 2011 WL 3863328 (Ohio Ct. App. Sept. 1, 2011). Gravity Park argues that on similar facts and in a case involving a Limited Event Coverage Endorsement, the Ohio Court of Appeals found that "open riding, on both the trails and the tracks, was the usual and customary business of AES," and, therefore, the insurer had a duty to defend and indemnify under its policy. *Id.*,

¶¶4, 65-67, 77, 79. The policy in *AES Promotions* defined "covered program" the same as in this case. *See id.*, ¶¶46-50.

¶30 We are not persuaded by *AES Promotions*. First, *AES Promotions* is an unpublished case from another jurisdiction. *See State v. Muckerheide*, 2007 WI 5, ¶7, 298 Wis. 2d 553, 725 N.W.2d 930 ("Although a Wisconsin court may consider case law from such other jurisdictions, obviously such case law is not binding precedent in Wisconsin, and a Wisconsin court is not required to follow it."). Second, although the policy in *AES Promotions* also contained a Limited Event Coverage Endorsement, the Ohio Court of Appeals did not analyze the language of that endorsement within the case, nor did it apply that endorsement when it reached its conclusion that the policy provided coverage. Third, the Limited Event Coverage Endorsement in that case did not limit the type of event to those reported and approved by the insurer, it limited the type of event to the insured's "approved trails and activities." *AES Promotions*, No. 2010AP100041, ¶¶7, 65-74. Fourth, the court specifically stated that "[u]pon review of the insurance policy in this case, we find that while such policy did not cover scheduled racing and/or competitive motocross events, it is not clear that riding on the race tracks during times when there were no scheduled events was meant to be excluded." *Id.*, ¶77. For these reasons, *AES Promotions* is not helpful to our analysis in this case.

¶31 Gravity Park's reading of the endorsements is not supported by the policy's plain language. Nothing in the Motorsports Endorsement expands the initial grant of coverage provided in the CGL Coverage Form or provides a separate initial grant of coverage such that the Limited Event Coverage Endorsement may not apply. We agree with National Casualty's argument that the Motorsports Endorsement "takes the CGL Coverage Form, as modified by the

Limited Event Endorsement, and adds more exclusions to the CGL Coverage Form which further limit the scope of coverage available to Gravity Park," but the "Motorsports Endorsement does not expand the CGL Coverage Form or negate the applicability of any other exclusions or limitations in the policy."

¶32 We therefore conclude that the circuit court erred in its interpretation of the policy. Accordingly, we reverse and remand with directions that the court grant National Casualty's motion for summary judgment.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.